# Cox *v.* The State.

*Indictment for Abusive or Obscene Language used near Dwelling-house, in presence of Female.*

1. *When witness may testify negatively, as to words used or charged.* A person who was present on the particular occasion inquired about, or near enough to hear what was said by the parties, may state that fact, and, further, that he did not hear them use the language imputed to them.

2. *Using abusive, insulting, or obscene language, in presence of female; joint indictment against two, and acquittal of one.*—The statutory offense of using abusive, insulting, or obscene language, in or near a dwelling-house, in the presence of a female (Code, § 4203), can not be committed by two or more persons jointly, though each might use the same unlawful words in an altercation; but, when two are jointly indicted, and one is acquitted, the judgment against the other being reversed on error, a *nolle-pros.* may be entered against the one who was acquitted.

FROM the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

The indictment in this case charged, in a single count, "that James Cox and Albert Martin entered into the dwelling-house of T. L. Head, or went sufficiently near thereto to be heard by the inmates thereof, and then and there, in the pres-

[Cox v. The State.]

ence of the family of said Head, or a member of said family, or of a female, made use of abusive, insulting, or obscene language, against the peace," &c. A demurrer to the indictment was overruled, and the defendants then pleaded not guilty; and issue being joined on that plea, a verdict of guilty was rendered against Cox, while Martin was acquitted.

On the trial, as the bill of exceptions states, said T. L. Head testified on behalf of the State that, a short time before the finding of the indictment, the defendants passed his store-house in said county, driving rapidly in a buggy along the highway; that a horse and buggy belonging to one Cargile was at the time standing hitched near the store, and the horse broke loose as the defendants passed, and ran up the road after them; that he called the attention of Cox to the loose horse, and the latter thereupon got out of his buggy, caught the horse, and held him until Cargile came up, who then used some angry words towards the defendants, got into his buggy, and drove off up the road ahead of the defendants; that he, witness, purposely detained the defendants, in order to give Cargile time to pass the dwelling-house of witness, distant about half a mile up the road, before they could overtake him; that the defendants, pursuing their journey, overtook Cargile "from sixty to seventy-five yards beyond the house," when an altercation ensued between them which was the foundation of the prosecution; Cox using profane and abusive language to Cargile, and Martin, while held by a by-stander, threatening to whip Cargile. " The defendant Cox moved the court to exclude said evidence [as to the words used] from the jury, because it was irrelevant, illegal, and tended to show two separate offenses committed by the defendants separately;" and he reserved an exception to the overruling of his objections. The witness Head further stated, that his wife was on the front porch of the house when the parties passed, heard the altercation, and shut herself up in the house from fear. Cargile was also examined as a witness for the prosecution, "and testified substantially as above, except that" he imputed to Cox the use of other abusive words, in addition to those stated by Head; and an exception was duly reserved by Cox to the overruling of his objections to this testimony. "One McCall was then introduced as a witness for the State, who testified, that he was present when the difficulty occurred between the defendants and said Cargile; that Cox, when he rode up to Cargile, said to him, 'Get out of that buggy, and I will whip you,' but neither of the defendants used any profane or indecent words. Defendants' counsel then asked said witness, 'Were you present, and near enough to see and hear what transpired between the parties?' The State ob-

jected to this question, and the court sustained the objection;" to which ruling the defendants duly excepted.

This being the substance of the evidence adduced, all of which is set out in the bill of exceptions, the defendants requested the court, in writing, to charge the jury, "that they must find the defendants not guilty, if they believed the evidence;" and an exception was duly reserved to the refusal of this charge.

N. W. GRIFFIN, for appellant.

T. N. McCLELLAN, Attorney-General, for the State, cited *Elliott v. The State*, 26 Ala. 78; *Walton v. The State*, 62 Ala. 200; 1 Wharton's Crim. Law, 433; 1 Bish. Cr. Pr. § 470; 2 Hale, P. C. 173; 10 Mo. 440.

STONE, C. J.—This case will have to be reversed, because of a ruling on the admission of evidence. The question to the witness McCall, whether or not he was present, or near enough to hear what words were used by the defendants, was a material factor in determining whether the defendants used the profane language imputed to them. If near enough to hear and understand what was said, testimony by him that he did not hear such language, though negative in its character, the law allowed him to lay before the jury for their consideration. It may have weighed but little, but that was for the jury. *Harris v. Bell*, 27 Ala. 520; 1 Brick. Dig. 872, § 968; *Ward v. Reynolds*, 32 Ala. 384. A witness may always testify to his means of knowing facts about which he gives evidence, either to strengthen or weaken what he says. Means of knowledge is one of the tests of the weight and credibility of testimony.

The question of the joinder of the two defendants in one indictment, may be cured on another trial, by a *nolle-prosequi* as to Martin, who was found not guilty.—*Berry v. The State*, 65 Ala. 117.

The defendants were indicted jointly, in one count, in such terms as to import a joint guilt of one and the same offense. The offense charged is the use, in the presence of a female, of "abusive, insulting, or obscene language."—Code of 1876, § 4203. It would seem that, *ex vi terminorum*, this offense can scarcely be committed by two or more persons conjointly. It is made up of speech—perverted speech—which is necessarily a personal, individual act; and if two should employ the same abusive or obscene language, it would seem this could not amount to a joint act. Each might be guilty, but we can not perceive how the guilt could be joint. Possibly, one might procure another to use language interdicted by the statute;

[Smith v. The State.]

and possibly such offense, so procured to be committed, would present a case of joint criminality. That is not this case. There is neither proof, nor ground for inference, that either of these defendants procured the other to use the language the testimony tends to show was uttered by that other. No joint offense was shown, and, under our rulings, it was error to indict them jointly, as having participated in the commission of one and the same misdemeanor.—*Elliott v. The State,* 26 Ala. 78; *Johnson v. The State,* 44 Ala. 414; *Lindsey v. The State,* 48 Ala. 169; *Walton v. The State,* 62 Ala. 197; *Young v. The King.* 3 T. R. 98, 103; *Stephens v. The State,* 14 Ohio, 386; *Gay's case,* 10 Mo. 441; *Com. v. McChord,* 2 Dana, 242.

There are some authorities which hold that, when two or more persons commit separate offenses of the same grade, and subject to the same punishment, they may be separately charged in one and the same indictment; and that in such case, the judge presiding, having regard to the matter of convenience, will exercise a sound discretion in quashing the indictment, or permitting the prosecution to proceed.—*The King v. Kingston,* 8 East, 41; 1 Bish. Cr. Proc. §§ 873-4-5; *Johnson v. The State,* 13 Ark. 684; *State v. Nail,* 19 *Ib.* 563; *Lewellen v. The State,* 18 Texas, 538. We need not express our opinion of such practice, further than to say it is hazardous, and should not be encouraged.

Reversed and remanded. The accused to remain in custody, until discharged by due course of law.

