13 So.2d 411

## CLAYTON et al. v. STATE.

### 7 Div. 671.

Court of Appeals of Alabama.

June 30, 1942.

Reversed After Remandment Feb. 16, 1943.

Rehearing Denied April 6, 1943.

108

Reed & Reed, of Centre, for appellants.

Thos. S. Lawson, Atty. Gen., and John W. Vardaman, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The indictment in this case contained only one count and charged the above designated appellants (defendants below) with the joint commission of the crime of rape. Said indictment is as follows: "The Grand Jury of said County charge that before the finding of this Indictment Fletcher Clayton and Curtis Daniel whose names to the Grand Jury are otherwise unknown than as stated, forcibly ravished, Alice Wright, a woman, against the peace and dignity of the State of Alabama."

Upon arraignment, and before entering upon the trial the defendants separately, severally and jointly moved the court to continue the case. In this connection the record discloses the following:

"Comes the defendants, separately, severally and jointly, and moves the Court to continue each of their cases, until the next term or session of this Court, and as grounds of their motion, say:

"1. For that the defendants have not had the opportunity to properly prepare for their defense.

"2. For that the offense with which they were charged is alleged to have been committed on the 27th day of July, 1941, and since that date, they have been confined in jail, without any opportunity on their part to prepare for their trial.

"3. For that the Grand Jury of said County was empaneled on the 4th day of August, 1941, and the indictment against them was returned on this same day, and they were arraigned on this same day and were required to plead thereto on the same day, without their having had an opportunity to consult their attorneys regarding their defense, their trial on such arraignment being set for August 13, 1941.

"4. That at that arraignments as aforesaid, defendants made arrangements with the firm of Reed and Reed, Attorneys, to defend them on their trial, but that their said attorneys were then engaged in the trial of cases in this Court continuously until Friday Night, the 8th day of August, 1941, and had no opportunity to properly prepare for trial on this date.

"5. That the Attorneys employed by the defendants devoted the whole of Saturday, August 9, 1941, and of Sunday, August 10, 1941, in an effort to prepare for the defense of defendants, but their Attorneys were required to return to the trial of cases in this Court on Monday August 11, 1941, where they were constantly engaged in the trial of cases until the adjournment of Court on Tuesday evening, August 12, 1941, and during this time, had no opportunity to prepare for the defense of these defendants.

"6. That after the arrest, confinement, and indictment of the defendants, that many rumors, mis-statements and extravagant statements were circulated throughout the entire County by which much excitement and prejudice was engendered against the defendants, the effect of which at this time will deprive the defendants of a fair and an impartial trial.

"7. That if such excitement and prejudice continues until the next session of this Court and is not by that time diminished, defendants will then probably demand a change of venue for their trial. Defendants, however, believe that if their trials at this time are continued, that it will not be necessary to seek a change of venue.

"Defendants offered in support of the foregoing motion for a continuance numerout affidavits of citizens from all parts of the County, and among such affidavits were those of T. R. Snead, Judge of Probate, G. D. Broom, County Superintendent of Education, Clyde H. West, Post Master, Centre, Alabama, J. Oleus Jordan, President, Farmers & Merchants Bank, Centre, Alabama, Glen Williamson, President Cherokee County Bank, Centre, Alabama, R. P. Snead, an Ex-Sheriff of said Cherokee County, M. H. Copeland, a member of the County Board of Education, and numerous others. Such affidavits so offered in support of their Motion for a continuance being in words and figures as follows:

State of Alabama, Cherokee County

"Before me, the undersigned authority in and for said County and State, personally appeared T. R. Snead who being known to me, and after first being duly sworn, according to law, deposes and says:

"I reside at Centre, Alabama in Beat No. 6, in Cherokee County, Alabama. I have heard the offense discussed in my community, of which Fletcher Clayton and Curtis Daniel are charged, and I have heard many different and wild and unreasonable statements made regarding the same. In some instances it has been stated that the victim was lacerated and torn, necessitating treatment by physicians, in other instances it has been reported that the victim was caused to abort as a result of the act with which said Clayton and Daniel are charged, and in other instances that the victim contracted some venereal disease as a result of this charge.

"This entire matter has been discussed in an extraordinary and unusual manner, and from such, there appears to be considerable excitement and prejudice prevailing against the said defendants, and as a result of such excitement and prejudice, it is not probable that the defendants can, at this time, secure a fair and an impartial trial.

"T. R. Snead

"Sworn to and subscribed to before me on this the 12 day of August, 1941.

"F. H. Norton

"A Notary Public, Cherokee County, Alabama."

In addition to the above-quoted affidavit of Hon. T. R. Snead, who the record shows is the Judge of Probate of Cherokee County, the defendant, as stated above, offered affidavits of similar import of about thirty-five other officials, and prominent citizens of said county in support of the motion to continue the case, all of which are set out in this record, and consume more than twenty pages of the record.

There was no attempt to contradict or dispute the facts stated and detailed in the foregoing affidavits, such facts were before the court and not denied or controverted in any manner. Seay v. State, 207 Ala. 453, 93 So. 403; Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527.

Following said affidavits in the transcript, the record contains this, "agreed statement of facts:"

"The State through its Solicitor and by agreement of Attorneys for defendant offered the following agreed statement of facts, related to defendant said motion for a continuance, viz:

" 'On the hearing of the defendants' motion to continue this cause the defendants offered numerous affidavits from various parties and the State offered the following agreed statement of facts: Upon the arraignment of the defendants in open Court Messrs. Reed and Reed, practicing attorneys at Centre, Cherokee County, Alabama, appeared at said arraignment in open Court and announced to the Court that they represented each of the defendants as counsel in this case, and that they appeared in said arraignment and represented both defendants.'

"Thereupon the court overruled the motion of the defendants to continue this case until the next session of this court to which action of the court in overruling their motion to continue defendants duly excepted."

█ It has many times been held that the granting or refusing a continuance is usually discretionary with the trial court, and the ruling in this connection will not be revised, in the absence of an abuse of discretion. Such discretion, however, cannot be arbitrarily exercised, and is in no sense absolutely conclusive; and where it appears there has been a palpable abuse of that discretion, resulting in disadvantage or injury to the defendant, such action will not only be revised, but will be corrected by the appellate court on review on appeal.

█ After a careful, thoughtful and attentive consideration of the question under discussion, we are clear to the conclusion, under the undisputed facts and circumstances upon which the motion for a continuance was based, that the court should have granted the motion, and that the action of the court in overruling and denying it, was error necessitating the reversal of the judgment of conviction from which this appeal was taken. In other words we hold, from what has been stated, there was a palpable abuse of discretion by the trial court in this ruling.

The term, "abuse of discretion," in the decisions of courts, implying in common parlance, a bad motive or wrong purpose, is not appropriate. It is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence; or as otherwise stated, where a court does not exercise a discretion in the sense of being discreet, circumspect, prudent, and exercising cautious judgment, it is an abuse of discretion. In a legal sense discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all the circumstances before it being considered. It does not necessarily imply "a wilful abuse or intentional wrong."

There are numerous other insistences of error presented on this appeal, but from our viewpoint we need advert to only one or two of the insistences, which, coupled with what has been hereinabove said, will be conclusive of this appeal.

As stated above, and as the indictment discloses, these appellants (defendants) were charged with the joint offense of rape, and were jointly tried, and jointly convicted. It is insisted by appellants that the testimony of the alleged injured party shows there were two separate and distinct offenses committed, and on this point our attention is directed to the statements made by the woman in question wherein she testified, among other things: "Clayton was going out of the house when Curtis had the intercourse, it took Fletcher about ten minutes to do what he did then he went out of the house, as Curtis came in. Curtis was not there with me as long as Fletcher was."

Appellants strenuously insist that "the indictment charged a single offense. The testimony of the prosecutrix shows two separate, distinct and disconnected transactions by each of the appellants separately. This being true, neither one of the appellants can be convicted under this indictment."

█ The law, as to this, is where an offense is of its nature several and distinct to such a degree that it cannot be committed by two or more jointly, it of course follows, that there can be no joinder of defendants in the same indictment. 31 C.J. page 755, Sec. 315; Mikell v. State, Ala. Sup., 5 So.2d 825 [1]; Elliott v. State, 26 Ala. 78; Lindsey et al. v. State, 48 Ala. 169; McGehee v. State, 58 Ala. 360; Cox v. State, 76 Ala. 66; Johnson v. State, 44 Ala. 414. In said case the Supreme Court declared: "Where two persons are jointly indicted for the same offense, if the proof shows the commission of the offense severally, by each, there can be no conviction of either or both." Townsend v. State, 137

---

[1] 242 Ala. 298.

Ala. 91, 93, 34 So. 382; Thomas v. State, 111 Ala. 51, 20 So. 617; Grimes et al. v. State, 23 Ala.App. 518, 128 So. 122; 31 C. J. Sec. 456, page 844; 31 C.J. Sec. 314, pages 754 and 755; 31 C.J.Secs. 315 and 316, page 755; People v. Richie, 317 Ill. 551, 148 N.E. 265; in this case, being one for the crime of rape, the Alabama cases are cited and approved, and discussed at length in the opinion. And it appears that the facts in this case and the case at bar are practically identical.

Appellants' able counsel further insists that: "The State makes no point whatever as to the insistence of appellants that the indictment in this case charged but a single offense. The testimony of the prosecutrix as stated in original brief show two separate and distinct acts on the part of each appellant. The offense of rape, of course, can not be committed by two persons at one and the same time, and it was not the theory of the State that the crime was jointly committed by the appellants, since proof was made of two separate and distinct transactions."

The point of decision under discussion is presented in every possible manner, and especially so, by the numerous charges refused to defendant. We see no escape, from what has been said, from holding and declaring the trial court was in error in its several rulings here complained of.

The trial court erred also in overruling and denying defendants' motion for a new trial.

Reversed and remanded.

## After Remandment.

BRICKEN, Presiding Judge.

Upon the original consideration of this case the order and judgment of this court reversing and remanding the cause was predicated upon the two points of decision as will be noted in the opinion, supra. Other insistences of error were presented, but in the opinion and view of this court, there appeared no necessity to discuss and decide them as not being necessary to the conclusion reached.

Upon certiorari to the Supreme Court, by the State, the writ was granted and the Supreme Court made and entered the following order, viz.: "It results that the writ is due to be granted, and the judgment of the Court of Appeals reversed and the cause remanded to that Court for further proceedings."

The two appellants, acting within their legal rights, insist upon the consideration by this court of the points of decision originally presented, and, as stated above, were not dealt with and decided in the original opinion. This we will now proceed to do.

In granting the writ the Supreme Court said: "With the general rule of law broadly stated in the opinion [of the Court of Appeals] we find no cause for disagreement." And the Supreme Court then proceeded in its opinion as follows: "But this reasoning overlooks the theory upon which the State proceeded in this case to the effect that defendant Clayton first assaulted the prosecutrix and defendant Daniel aided and abetted in this assault and conspired with Clayton to lure the husband away from home in order to leave Clayton free to commit the offense."

As to the foregoing, earnest counsel for appellant say in brief: "It is difficult for us to understand just how the Supreme Court reached the above conclusion from the record in this case, as it conclusively appears from the record that the defendants were tried on the testimony of the prosecutrix to the effect that each defendant separately and independent of the act of the other, each, with force and against her will had sexual intercourse with her."

By what method or upon what premise the Supreme Court announced in the opinion the (stated) theory upon which the State tried this case in the court below cannot and does not concern this court; for under the Statute Title 13, Section 95, Code of Alabama 1940, the opinions and decisions of the Supreme Court govern the holdings and decisions of this court, and what is said hereinafter will be confined to the stated theory (supra) in which the State tried this case as declared and announced by the Supreme Court.

These two appellants, as defendants in the court below, as are all persons charged with crime, were entitled to a fair and impartial trial, according to the fundamental law of the land, which among other things, import that the trial shall be had before a fair and impartial jury to judge the facts; and that said jury shall be properly, and without error, or omission, instructed as to all phases of law pertaining and controlling in the case upon trial.

In the instant case, appellants strenuously insist that the trial court not only failed to properly charge the jury as

to the pertinent and controlling principles of law, but absolutely refused to so charge the jury as evidenced by the refusal of several special written charges requested by the defendants.

In this connection it is insisted that error prevailed in the action of the trial court in refusing to defendants written charges numbered 5, 6, 7, 8, 9 and 18. These we have examined and are of the opinion the insistence in this connection is well taken and must be sustained. The charges properly and correctly state the law, and are directly in point with the "theory upon which the case was tried," as declared by the Supreme Court, supra. As stated, the Supreme Court held that the case was tried upon the theory that defendant Daniel aided and abetted Clayton in the assault, and conspired with him in the commission of the offense. Certainly, then, the defendants were entitled to have the jury instructed as to the law applicable to such a situation, and, as further stated, this the court failed and refused to do. The Attorney General, in brief, undertakes to justify the action of the trial court in refusing said charges by the insistence that they were fairly and substantially covered by the court's oral charge, and by several charges marked "Given," requested by the defendant. The principal insistence in this respect has reference to charge 9, which the Attorney General insists was given by the court. Charge 9 was practically the same as other charges refused to defendant, it properly states the law, and if said charge had been given, as contended by the Attorney General, it would probably have been conclusive of the question under consideration. But charge 9 was refused and not given by the trial court, and this clearly appears in this record. Its refusal was also error.

■ Another insistence of error, not considered heretofore, is the court erred in admitting evidence of foot prints on the wall of the house where the offense is said to have been committed, as no effort was made, nor attempt to show, any identity of the tracks, or similarity with the tracks of either of these defendants. Neither was there any effort to show who made the foot prints on the wall, nor when the same were made, and it is further argued in this connection, from aught appearing, these foot prints may have been made there weeks before the time of the alleged offense. The exceptions reserved in this connection were well taken. Moore v. State, 4 Ala.App. 65, 59 So. 189; Coulliette v. State, 22 Ala.App. 649, 119 So. 511. The two cases cited hold, it was error to admit testimony of foot prints without some proof of identification. As here offered, we are of the opinion that said testimony was irrelevant, inadmissible and immaterial.

■ There are two remaining questions to be here considered: (1) We are urgently requested to place the trial court in error for refusing to defendants the general affirmative charge directing a verdict in their behalf because of the insufficiency of the evidence to support a conviction. It is true the conviction of the two defendants was had upon the testimony of the alleged injured party. Her testimony, notwithstanding its unusual purport, and manifest improbabilities, was before the jury, and the court below was without authority to hold there was no testimony before the jury as to the guilt of the accused parties. (2) The next question is the action of the court in overruling and denying defendants' motion for a new trial. As to this, we are firm in the opinion that reversible error prevailed, and that the exception duly reserved to this action of the court was well taken. (1) For the rulings of the court hereinabove discussed and held to be error. (2) On account of the precipitate haste in forcing the defendants to trial in connection with which it was made known to the court, that the eminent firm of attorneys, defending these two defendants, in their place as officers of the court, made and presented to the court the following uncontroverted motion for a continuance:

"Comes the defendant, separately, severally and jointly, and moves the Court to continue each of their cases, until the next term or session of this Court, and as grounds of their motion, say:

"1. For that the defendants have not had the opportunity to properly prepare for their defense.

"2. For that the offense with which they were charged is alleged to have been committed on the 27th day of July, 1941, and since that date, they have been confined in jail, without any opportunity on their part to prepare for their trial.

"3. For that the Grand Jury of said County was empaneled on the 4th day of August, 1941, and the indictment against them was returned on this same day, and they were arraigned on this same day and

were required to plead thereto on the same day, without their having had an opportunity to consult counsel their attorneys regarding their defense, their trial on such arraignment being set for August 13, 1941.

"4. That at their arraignment as aforesaid, defendants made arrangements with the firm of Reed and Reed, Attorneys, to defend them on their trial, but that their said attorneys were then engaged in the trial of cases in this Court continuously until Friday Night, the 8th day of August, 1941, and had no opportunity to properly prepare for trial on this date.

"5. That the attorneys employed by the defendants devoted the whole of Saturday, August 9, 1941, and of Sunday, August 10, 1941, in an effort to prepare for the defense of defendants, but their attorneys were required to return to the trial of cases in this Court on Monday August 11, 1941, where they were constantly engaged in the trial of cases until the adjournment of Court on Tuesday evening, August 12, 1941, and during this time, had no opportunity to prepare for the defense of these defendants.

"6. That after the arrest, confinement, and indictment of the defendants, that many rumors, mis-statements and extravagant statements were circulated throughout the entire County by which much excitement and prejudice was engendered against the defendants, the effect of which at this time will deprive the defendants of a fair and an impartial trial.

"7. That if such excitement and prejudice continues until the next session of this Court and is not by that time diminished, defendants will then probably demand a change of venue for their trial. Defendants, however, believe that if their trials at this time are continued, that it will not be necessary to seek a change of venue."

In support of the foregoing motion, the defendants, in addition to the direct and uncontroverted statements of counsel, offered the following:

"Defendants offered in support of the foregoing motion for a continuance numerous affidavits of citizens from all parts of the County, and among such affidavits of citizens from all parts of the County, and among such affidavits were those of T. R. Snead, Judge of Probate, G. D. Broom, County Superintendent of Education, Clyde H. West, Post Master, Centre, Alabama, J. Oleus Jordan, President, Farmers & Merchants Bank, Centre, Alabama, Glen Williamson, President Cherokee County Bank, Centre, Alabama, R. P. Snead, an Ex-Sheriff of said Cherokee County, M. H. Copeland, a member of the County Board of Education, and numerous others. Such affidavits so offered in support of their Motion for a continuance being in words and figures as follows:

"State of Alabama
"Cherokee County

"Before me, the undersigned authority in and for said County and State, personally appeared T. R. Snead who being known to me, and after first being duly sworn, according to law, deposes and says:

"I reside at Centre, Alabama in Beat No. 6, in Cherokee County, Alabama. I have heard the offense discussed in my community, of which Fletcher Clayton and Curtis Daniel are charged, and I have heard many different and wild and unreasonable statements made regarding the same. In some instances it has been stated that the victim was lacerated and torn, necessitating treatment by physicians, in other instances, it has been reported that the victim was caused to abort as a result of the act with which said Clayton and Daniel are charged, and in other instances that the victim contracted some venereal disease as a result of this charge.

"This entire matter has been discussed in an extraordinary and unusual manner, and from such, there appears to be considerable excitement and prejudice prevailing against the said defendants, and as a result of such excitement and prejudice, it is not probable that the defendants can, at this time, secure a fair and an impartial trial.

"T. R. Snead

"Sworn to and subscribed to before me on this the 12 day of August, 1941.
"F. H. Norton
"A Notary Public, Cherokee County, Alabama."

The trial itself, refuted in full the wild, unfounded highly prejudicial and inflammatory rumors, above set out; and as to the condition of the alleged injured party, the record discloses that a short time after the alleged commission of the offense, State witness Dr. W. J. Campbell (whose qualifications as a physician was admitted) testified, among other things of like import: "On Sunday the 27th of last July, I went to the home of Whitney Wright, beyond Cedar Bluff, I got there about 9.00 o'clock.

I suppose, I am not positive about the time, I saw Alice Wright, I made an examination of her person on that occasion. There wasn't any bruises or abrasions of any kind except a small red area about the middle of the back about an inch or an inch and a half long, a little redness there, there were not any scratches. * * * * I examined this lady's genital organs, I found nothing out of the ordinary. * * * * When I got there, she was in the room with a broom in her hand, I got the impression she was cleaning up house. She did not appear to be unduly nervous or excited, I examined her heart action and her pulse, her pulse was in the normal limit. Her respiration was apparently normal. I didn't count it, I observed nothing out of the ordinary with reference to her nervous condition. She was not excited, more than you would expect of a woman subjecting herself to a routine examination."

■ The trial court, in its action on the motion for a new trial, should have taken in consideration the fact that no outcry, commotion or other confusion occurred, or was had at the time the offense was said to have been committed. Also the fact that the house, in which it was claimed the acts occurred, was in close proximity to the highway, where the record shows numerous people were passing to and fro at the very time. The record further shows that immediately after it is alleged the offense was committed one Cecil Steele testified: "That he saw the defendants as he approached this house, saw them get into their automobile and drive away, that he was about 100 yards away when the defendants drove into the highway, and that he passed on in front of the house, and had a conversation with the prosecutrix, who said nothing to him at all about having been mistreated. This man was a close relative of the prosecutrix, or of her husband, and when the prosecutrix was asked why she did not tell Cecil Steele of this occurrence, her nonchalant answer was: 'I didn't think it was any of his business.'"

There are other facts and circumstances disclosed by this record which convince this court that the two defendants were not accorded the fair and impartial trial to which they were entitled, and in reversing and remanding this case we cannot see that the State would suffer by another trial of these defendants, who may receive at the hands of the court and jury the fair and impartial trial to which they are entitled. The court erred to a reversal in overruling the motion for a new trial under the facts of this case.

Reversed and remanded.

## On Rehearing.

BRICKEN, Presiding Judge.

We are unable to accord to the insistence of the State, on its application for rehearing, to the effect that the refusal by the trial court of the several written charges hereinabove referred to should be sustained, for that, said charges were "fairly and substantially" covered by the oral charge of the court and by the charges given at request of the defendant. It affirmatively appears to the contrary and this insistence is untenable.

As to the oral charge of the court, it would require a strained construction thereof to hold that the brief and cursory statement (only) made by the court had any tendency to "fairly and substantially" cover the principles of law contained in the refused written charges under discussion. The only utterance of the court having reference to the questions here involved, was as follows: "Gentlemen of the Jury, the law says that where two parties are present at the commission of a crime and one aids or assists or abets the other in the committing of the crime he is guilty of the crime himself. In other words, a person who aids, assists or abets, under our law is as guilty as the principal."

As insisted by able counsel for appellant: "Charges 11, 12 and 13 neither one makes any reference at all to the law as related to principal and accessory, and have nothing whatever to do with the law in relation to such a situation. Charge 16 simply states that to convict on the theory of aiding or abetting the burden rests upon the State to prove something more than the mere presence of the defendant at the commission of the offense. This charge does not deal with the measure of proof, nor has it any relation whatever as to the effect of a reasonable doubt, as to the question or fact of aiding and abetting."

Without reference as to "the theory upon which this case was tried" in the lower court, the defendant, Curtis Daniel, stoutly maintained throughout the trial that he was wholly innocent of the crime charged against him, and that he had never at any

time laid his hands on the woman in question. He did testify: "I know Mrs. Wright and have known her between two and three years, that Sunday morning that me and Fletcher Clayton were up at her house I did not abuse that woman in any way, I did not put my hands on her, did not touch her, I did not force her to submit to any improper conduct, I did not have intercourse with her, I did not have anything to do with Fletcher having an intercourse with her. Me and Fletcher never mentioned anything about having intercourse with her before we got there, I did not have any part in what Fletcher did there on that occasion. We got there between six and seven o'clock, I didn't have a watch, I would guess about seven. I was driving when we reached that place. * * Clayton got out and I did not see him any more after he went in the house before I left, Whit Wright came out of the house, I had not heard a conversation between Fletcher and Whit in the house. Whit came out and I carried him to the Gulf plant, Whit told me to do this. * * * I carried him to the Gulf plant, Whit got out of the automobile there and I turned around and went back up the highway * * * and drove back up there and into the back yard. * * * The Wright children came out there and got in the car, I sat there in the car with the children two or there minutes. * , * * I got out of the car before Fletcher came out of the house, I went upon the porch and looked in the door, I saw Fletcher and this woman on the mattress and he was on top of her. * * * They did not see me, I slipped up there on the porch and watched them there from three to five minutes on that mattress, I left the children in the car, I slipped away without them knowing that I was there and eased down in the car. I didn't tell Fletcher that I saw him until after we left there, I said, 'well, you didn't know I was there but I slipped up and watched you.' I don't know that we laughed much, he looked surprised. * * * When Fletcher came out of the house I was sitting in the car. I then got out of the car, went to the house, started in, I got in the first room, this lady was in the door going into the next room, I saw her there, * * * she threatened to hit me with the broom, she reached and got the broom and I got out and got in the car and left there. * * * When this woman told me to get

out of the house, she said that she would tell Whit if I didn't. I said 'well, now if you want to start telling something, I saw something and I can tell something too,' that was when she reached for the broom and I went out of the house."

The testimony of the other defendant was of like import, except that he readily admitted having intercourse with the woman to which she consented that he used no force of any kind.

It was the theory of the defendants that the woman made complaint to her husband in order to forestall the intimation made by Daniel that he would tell what he saw her doing.

 All this, of course, was for the jury to determine primarily and for the trial judge to weigh and consider on the motion for a new trial; and in this connection the court should have considered the testimony of the doctor (State witness) who at the request of the Sheriff made a minute examination of the alleged injured party a very short time after the alleged commission of the offense. He found her calm and collected, not even excited, as testified to by Dr. Campbell, and hereinabove quoted at length.

In a prosecution for rape (a capital offense) it is essential for the jury to be exceedingly cautious how they convict a defendant on the uncorroborated testimony of the prosecutrix, for the experience of the courts has amply attested the assertion of Lord Hale (many times cited and quoted) "that the charge of rape is 'an accusation easy to make and hard to be proved, and harder still to be defended by the party accused though ever so innocent.'" Barnett v. State, 83 Ala. 40, 45, 3 So. 612, 615.

From the facts and circumstances of this case, unusual and almost without parallel, this court adheres to the firm opinion that these two appellants should be accorded another trial, so that they may have a fair and impartial trial free of prejudice and error such as the law not only provides but also contemplates. Such a trial is not shown by this record, and, as stated, for the errors indicated, including the action of the trial court in overruling the motion for a new trial, the order and judgment heretofore made and announced will stand undisturbed.

Application for rehearing overruled.