The no-opinion order of affirmance of January 18, 2008, is withdrawn, and the following is substituted therefor.
Patrick S. Ramsey ("the father") and Carla R. Ramsey ("the mother") were married in May 1994. The father is an obstetrician and a professor of obstetrics; the mother was not employed at the time of the parties' separation on July 23, 2006. The parties lived in Birmingham from June 1998 until the date the parties separated. Two children were born of the marriage, one in 1999 and one in 2004.
The parties had a oral disagreement in late July 2006, after which the mother indicated her intent to take herself and the children on a trip to Nebraska to visit her parents. The father acquiesced in this plan because he was to attend a medical conference in Denver, Colorado, during the same period. While in Nebraska, the mother met with an attorney and decided to institute an action seeking a legal separation from the father. She arrived at the father's Denver-area hotel on August 1, 2006, and presented him with a document entitled "Stipulation as to Temporary Matters," which the father and the mother both signed that evening. The stipulation addressed child-custody, child-support, and spousal-support matters. The mother filed the stipulation in the District Court of Lincoln, Nebraska ("the Nebraska trial court"); the Nebraska trial court approved the stipulation.
After the father returned to Alabama and sought the advice of counsel, he instituted a divorce action in the Jefferson Circuit Court ("the Alabama trial court") on August 18, 2006. The mother filed a "Motion to Defer Jurisdiction" in the Alabama trial court on September 14, 2006, in which she relied upon § 30-3B-207(a), Ala. Code 1975, a portion of Alabama's version of the Uniform Child Custody Jurisdiction and Enforcement Act (the "UCCJEA"). Section 30-3B-207 permits a trial court having jurisdiction under the UCCJEA to decline to exercise that jurisdiction on the basis that it is an inconvenient forum for the child-custody litigation. The mother argued in her motion to defer jurisdiction that the father had entered into the stipulation regarding temporary matters in the Nebraska litigation; that the older child of the parties had been enrolled in school in Nebraska, pursuant to the stipulation; *Page 883 
that the mother had long-standing ties to Nebraska; that the parties had no significant ties to Alabama, which she averred was demonstrated by the father's efforts to become employed in another location. Based on these facts, the mother said, the Alabama trial court should decline to exercise jurisdiction. The mother further noted in her motion that § 30-3B-206, Ala. Code 1975, required the Alabama trial court to communicate with the Nebraska trial court to determine which state would be the more appropriate forum for the child-custody litigation.
Meanwhile, the father had moved to dismiss the Nebraska action. The Nebraska trial court held a hearing on the father's motion, after which it entered the following order:
 "The Court recognizes that it does not have jurisdiction to proceed in a juvenile custody determination unless the requirements of [Neb.Rev.Stat. § 43-1226] et seq. are complied with. The Court, in this case, proceeds under [Neb.Rev.Stat. § 43-1241], and determines that it will continue to exercise jurisdiction over the children until an order is obtained from the state of Alabama indicating that it intends to exercise jurisdiction. If the state of Alabama proceeds, it is clear to this Court that that would be the home state of the minor children and would be vested with jurisdiction to make the determination regarding the children's custody. Should the Alabama court decline to proceed in his matter and determine that Nebraska is the more convenient forum, the Court would have no difficulty in proceeding with the action brought by the [mother]. The Court does not believe that the Stipulation of the parties is sufficient to grant jurisdiction to the Court if the Alabama court decides to proceed."
The father objected to the mother's motion to defer jurisdiction. He argued that the parties and the children did have a significant connection with Alabama and "that . . . `overwhelming' evidence is available in the state of Alabama concerning the children's care protection, training, and personal relationships." In the affidavit he attached to his motion, the father re-counted the activities in which the children were involved, mentioned friends that the children had in the Birmingham area, and noted that the children's dentist and pediatrician were both located in the Birmingham area.
In response to the father's objection to her motion to defer jurisdiction, the mother filed an affidavit in support of her motion. In that affidavit, the mother indicated that the names of the children's "friends" that the father recounted in his affidavit consisted in large part of the list of names on the children's school or activity rosters. She also reported that the parties' older child was adapting well to the new school in which he had been enrolled in Nebraska.
On December 19, 2006, the Alabama trial court entered a judgment deferring jurisdiction to the Nebraska trial court. That order, in its entirety, reads as follows:
 "THIS cause came on for consideration by the Court on the [mother's] Motion to Defer Jurisdiction in the within matter. The Court, having considered said motion, as well as heard argument from the attorneys for both parties, finds that the [father] has voluntarily submitted himself to the jurisdiction of the District Court of Lincoln County, Nebraska and does hereby enter the following Order. It is, therefore,
 "ORDERED, ADJUDGED and DECREED as follows: *Page 884 
"(1) The [mother's] Motion to Defer Jurisdiction is granted.
 "(2) Jurisdiction in the within matter is deferred to the District Court of Lincoln County, Nebraska.
 "(3) Court costs accrued in the above styled matter are hereby taxed as paid."
The father appeals, arguing that the Alabama trial court's determination that it should defer jurisdiction of the child-custody litigation to the Nebraska trial court was plainly and palpably wrong and an abuse of discretion, that the Alabama trial court erred by failing to communicate with the Nebraska trial court regarding which court would be the more appropriate forum, as required by § 30-3B-206(b), and that the Alabama trial court should have considered the option of "divisible divorce." The mother, while conceding that Alabama has home-state jurisdiction under the UCCJEA, argues that the father's assent to the stipulation was an agreement that the Nebraska trial court could take jurisdiction over the custody litigation and that the Alabama trial court's decision to defer jurisdiction was therefore appropriate. She further argues that the father never requested that the Alabama trial court communicate with the Nebraska trial court and that, even if the failure of the Alabama court to so communicate was error, it was harmless error. Finally, the mother argues that the father's failure to ask the Alabama trial court to retain jurisdiction over the parties' divorce action while deferring jurisdiction as to the custody litigation to the Nebraska trial court should prevent him from successfully arguing that the Alabama trial court's judgment should be reversed for failing to do so.
As the father points out, and as the mother concedes, Alabama has home-state jurisdiction over the child-custody determination under Alabama's version of the UCCJEA. That is, Alabama is "[t]he state in which [the] child[ren] lived with a parent . . . for at least six consecutive months immediately before the commencement of a child custody proceeding." § 30-3B-102(7). Section 30-3B-201(a) provides, in part:
 "[A] court of this state has jurisdiction to make an initial child custody determination only if:
 "(1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state."
A court having jurisdiction to make a child-custody determination may nevertheless decline to exercise that jurisdiction "if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." § 30-3B-207(a). The determination whether it is an inconvenient forum under the UCCJEA requires a trial court to consider several enumerated factors, which are outlined in § 30-3B-207(b):
 "(b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
 "(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
 "(2) The length of time the child has resided outside this state; *Page 885 
"(3) The distance between the court in this state and the court in the state that would assume jurisdiction;
 "(4) The relative financial circumstances of the parties;
 "(5) Any agreement of the parties as to which state should assume jurisdiction;
 "(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
 "(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
 "(8) The familiarity of the court of each state with the facts and issues in the pending litigation."
In his brief to this court, the father discusses each of the above-enumerated factors. He explains that no allegations of domestic violence have been made in the case and that the children had lived out-side Alabama for only approximately one month at the time he filed the divorce action. He also notes that all the evidence concerning the lives of the children, including their schooling, activities, and health-care history, is located in Alabama. The mother, for her part, relies heavily on the father's execution of the stipulation regarding the children's custody that she filed in conjunction with the Nebraska legal-separation action.
The Alabama trial court's judgment indicates that it, too, relied heavily on the father's "voluntarily submitt[ing] himself to the jurisdiction of the District Court of Lincoln County, Nebraska." The judgment does not indicate that the Alabama trial court communicated with the Nebraska trial court or that the Alabama trial court considered any of the other factors enumerated in § 30-3B-207(b).
A trial court's decision to decline to exercise jurisdiction under the predecessor statute to § 30-3B-207(b) was reviewed only for an abuse of the discretion vested in the trial court by the legislature's use of the word "may" in that statute. Case v. Case, 627 So.2d 980, 983
(Ala.Civ.App. 1993) (stating, in a case applying the predecessor statute to § 30-3B-207(b), that "My use of the word `may,' the statute makes the refusal to exercise jurisdiction discretionary with the trial court"); Stevensonv. Stevenson, 452 So.2d 869, 871 (Ala.Civ.App. 1984) (stating that a decision to decline jurisdiction under the predecessor statute to § 30-3B-207(b) "will not be overturned on appeal, absent an abuse of discretion"); andBallard v. Ballard, 444 So.2d 872, 873
(Ala.Civ.App. 1984) (stating that a decision to decline jurisdiction under the predecessor statute to § 30-3B-207(b) is "obviously a discretionary one"). The predecessor to the UCCJEA was the Uniform Child Custody Jurisdiction Act ("the UCCJA"), which was codified at § 30-3-20 et seq., Ala. Code 1975. The UCCJA was repealed effective January 1, 2000. Former § 30-3-27 permitted a trial court having jurisdiction over a child-custody determination to decline to exercise jurisdiction. That section read, in pertinent part, as follows:
 "(a) A court which has jurisdiction under this article to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
 "(b) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child. *Page 886 
"(c) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
 "(1) If another state is or recently was the child's home state;
 "(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants;
 "(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
 "(4) If the parties have agreed on another forum which is no less appropriate; and
 "(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 30-3-21."
The current statute, § 30-3B-207(a), also makes the determination as to whether a trial court is an inconvenient forum a discretionary one; like its predecessor, the current statute also states that a trial court "may decline to exercise its jurisdiction." Thus, we conclude that we must review a trial court's determination that it is an inconvenient forum under § 30-3-207(b) in the same manner that we did under the UCCJA, that is, we must affirm that determination unless the appellant demonstrates that the trial court abused its discretion. As we have recently explained, to establish an abuse of the trial court's discretion, an appellant must demonstrate that the trial court's decision
 "`exceed[ed] the bounds of reason, all the circumstances before it being considered,' Clayton [v. State], 31 Ala.App. [106,] 110, 13 So.2d [411,] 415, [rev'd on other grounds, 244 Ala. 10, 13 So.2d 420(1942),] or that the [trial] court `committed a clear and palpable error, without correction of which manifest injustice will be done.' Clayton, 244 Ala. at 12, 13 So.2d at 422."
D.B. v. J.E.H., 984 So.2d 459, 462-63
(Ala.Civ.App. 2007). As we noted:
 "`The term, "abuse of discretion," in the decisions of courts, implying in common parlance, a bad motive or wrong purpose, is not appropriate. It is really a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence; or as otherwise stated, where a court does not exercise a discretion in the sense of being discreet, circumspect, prudent, and exercising cautious judgment, it is an abuse of discretion. In a legal sense discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all the circumstances before it being considered. It does not necessarily imply "a wilful abuse or intentional wrong."`"
D.B., 984 So.2d at 462 (quoting Clayton v.State, 31 Ala.App. 106, 110, 13 So.2d 411, 415, rev'don other grounds, 244 Ala. 10, 13 So.2d 420 (1942)).
The Alabama trial court considered the written materials submitted by both parties and legal arguments of counsel before determining that it should decline to exercise jurisdiction over the child-custody determination, despite Alabama's status as the home state of the children. The UCCJEA does not require that written findings be made before a trial court may decline to exercise jurisdiction under § 30-3B-207(b). The Alabama trial court made no specific findings regarding the eight factors enumerated in the statute; however, it is well established that, in the absence of specific findings of fact concerning an issue, we must presume that the trial court made those findings that would support *Page 887 
its judgment, unless those findings would be clearly erroneous. Tompkins v. Tompkins, 843 So.2d 759, 765
(Ala.Civ.App. 2002). Because the limited evidence in this case indicates that the father did agree to vest temporary custody of the children in the mother pursuant to the stipulation entered in the litigation in the Nebraska trial court, because the father's financial circumstances would enable him to absorb the costs of travel to Nebraska more readily than the mother would be able to absorb the costs of travel to Alabama, and because most of the other factors, although perhaps weighted in favor of the Alabama forum, do not necessarily require the Alabama trial court's retention of jurisdiction over the case, we cannot agree with the father that the Alabama trial court abused its discretion by declining to exercise jurisdiction over the child-custody determination in this case.
Judge Moore, in his dissent, asserts that the Alabama trial court's mention of one of the factors listed in § 30-3B-207(b) in its judgment indicates that the Alabama trial court failed to consider the other seven factors in that statute when making its decision whether to decline jurisdiction. In his rehearing brief, the father urges us to adopt Judge Moore's position and to reverse the Alabama trial court's judgment. We do not believe that a trial court's indication that it considered one of many factors enumerated in a statute requires an appellate court to presume that the trial court did not also consider the other factors enumerated in that same statute. To do so in this case would, in our opinion, run afoul of Ex parte Farm, 810 So.2d 631, 637
(Ala. 2001) (overruling Fesmire v. Fesmire,738 So.2d 1284 (Ala.Civ.App. 1999), which had required a trial court to make written findings regarding family or domestic abuse in custody cases despite the fact that the Custody and Domestic or Family Abuse Act, codified at Ala. Code 1975, § 30-3-130 et seq., did not itself require written findings on the issue), by requiring that a trial court, if it makes any findings at all in support of its judgment, make a finding regardingall the factors enumerated in a statute, despite the fact that the statute itself does not require that any findings be made.
We note that, although a trial court is required to consider the enumerated factors, not all factors will be implicated in every case, [1] and the statute permits the trial court to consider other nonenumerated factors it may deem relevant. Although it is clear that the Alabama trial court considered the father's assent to the stipulation as evidence indicating that he had agreed to allow the Nebraska trial court to assume jurisdiction over the issue of custody, see
§ 30-3B-207(b)(5), the mother presented other arguments and evidence indicating that Alabama was an "inconvenient forum," or, more aptly, that Nebraska was a more convenient forum. Thus, we cannot conclude that the Alabama trial court abused its discretion by deferring jurisdiction pursuant to § 30-3B-207(b) in this particular case.
The Alabama trial court's failure to communicate with the Nebraska trial court is also not a sufficient ground for reversal in the present case. The UCCJEA does require communication between courts *Page 888 
when simultaneous proceedings have been commenced.
 "(b) Except as otherwise provided in Section 30-3B-204, a court of this state, before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to Section 30-3B-209. If the court determines that a child custody proceeding has been commenced in a court in another state having jurisdiction substantially in accordance with this chapter, the court of this state shall stay its proceeding and communicate with the court of the other state. If the court of the state having jurisdiction substantially in accordance with this chapter does not determine that the court of this state is a more appropriate forum, the court of this state shall dismiss the proceeding."
§ 30-3B-206(b); see also Colston v. Colston,660 So.2d 1357, 1359 (Ala.Civ.App. 1995). However, we agree with the mother that the posture of this case was such that the failure to communicate was, if error, harmless error. See Rule 45, Ala. R.App. P. (explaining that "[n]o judgment may be reversed . . . unless . . . it should appear that the error complained of has probably injuriously affected substantial rights of the parties"). The Nebraska trial court stayed further action on the child-custody proceeding pending in that court upon the father's motion; the Alabama trial court was apprised of this circumstance and had a copy of the Nebraska trial court's order stating that it was awaiting the Alabama trial court's decision on whether it would exercise home-state jurisdiction under the UCCJEA. Any communication with the Nebraska trial court, which had only approved the parties' stipulation regarding temporary custody and stayed the case pending the Alabama trial court's decision whether to decline jurisdiction, would have yielded little, if any, information helpful to the Alabama trial court.
The father further argues that the Alabama trial court erred when it failed to retain jurisdiction over the divorce action when it declined to exercise jurisdiction over the child-custody determination. He argues that the Alabama trial court should have considered the concept of "divisible divorce" as set out in Estin v. Estin, 334 U.S. 541,68 S.Ct. 1213, 92 L.Ed. 1561 (1948), so that he could have exercised his right to an absolute divorce instead of having to await the mother's meeting the one-year residency requirement for a divorce imposed by Nebraska law. See Neb. Rev.Stat. § 42-349 (2004) (indicating that no divorce action may be brought in a Nebraska trial court unless one of the parties has been resident of the state for at least one year unless certain other requirements not satisfied by the parties in the present case are met). Indeed, the UCCJEA permits a trial court to continue to exercise jurisdiction over a divorce action even after declining to exercise jurisdiction over the related child-custody determination. § 30-3B-207(d). However, we fail to see the relevancy of Estin and the concept of divisible divorce in this particular case.
In fact, the father's argument on this issue is confusing. He argues that the Alabama trial court abused its discretion in determining that it was an inconvenient forum under § 30-3B-207(b) and then, as a result of that conclusion, states that the trial court erred by not considering "divisible divorce" as an "alternative"; we are unable to determine how retaining jurisdiction over the divorce action is an "alternative" to declining jurisdiction over the child-custody determination under the UCCJEA. However, we will endeavor to address the father's argument by discussing *Page 889 Estin and the concept of "divisible divorce."
Estin was concerned in large part with the Full Faith and Credit Clause contained in Article 4, § 1, of the United States Constitution and how an ex parte divorce entered in the State of Nevada, where the husband lived at the time the judgment was entered, affected the rights of the wife under a legal-separation judgment that had been entered earlier in the State of New York. Estin, 334 U.S. at 542-43,68 S.Ct. 1213. The parties, who had originally resided in New York, separated in 1942, after which the wife instituted an action seeking a legal separation in New York. Id. at 542,68 S.Ct. 1213. After the husband had entered a general appearance, the New York court entered a judgment of legal separation and awarded the wife alimony. Id. at 542-43,68 S.Ct. 1213. In 1954, the husband, who was then living in Nevada, instituted an action seeking a divorce in a Nevada court; although the wife was notified of the divorce action by constructive service, she never entered an appearance in the action. Id. at 543, 68 S.Ct. 1213. The Nevada court entered a judgment divorcing the parties; that judgment awarded no alimony. Id.
When the husband stopped paying alimony, the wife sued for an alimony arrearage in a New York court. Id. The husband defended the action on the basis that the Nevada divorce judgment had terminated his obligation to pay alimony under the New York legal-separation judgment. Id. The New York courts disagreed, and the husband appealed the arrearage judgment to the United States Supreme Court, arguing that New York law provided that the right to alimony was extinguished by a divorce judgment. Id.
After explaining that the question whether, under New York law, the wife's right to alimony had been extinguished upon the entry of the divorce judgment was a matter for the courts of New York to decide, and noting that the New York courts had ultimately answered the question in the negative, id.
at 544, 68 S.Ct. 1213, the United States Supreme Court did indicate that divorce was "divisible" in nature, stating that the Nevada judgment divorcing the parties could be given effect insofar as it affected the marital status of the parties but that it could not affect the wife's alimony rights under the New York judgment because the Nevada court had not acquired in personam jurisdiction over the wife. 334 U.S. at 549,68 S.Ct. 1213.
Unlike the wife in Estin, the father in the present case submitted himself to the jurisdiction of the Nebraska trial court for the purpose of the legal-separation action, so any judgment regarding the incidents of legal separation, including spousal support, child support, and, in light of the Alabama trial court's decision to decline jurisdiction over the child-custody determination, child custody would be binding on the father. Although the Alabama trial court could have continued to exercise jurisdiction over the divorce action under § 30-3B-207(d), the father failed to specifically request such an outcome. In fact, although he mentioned in his postjudgment motion that the Alabama trial court's order transferring the divorce action to the Nebraska trial court rendered him "unable" to secure a divorce in either the State of Nebraska or the State of Alabama, the father requested that the Alabama trial court reconsider its ruling declining to exercise jurisdiction over the child-custodydetermination. Because the father failed to request that the Alabama trial court retain jurisdiction over the divorce action while declining to exercise jurisdiction over the child-custody determination, we cannot hold the Alabama trial court in error on that ground. Shealy v. Golden, *Page 890 
959 So.2d 1098, 1106 (Ala. 2006) (reiterating the well-established principle that an appellate court may not consider arguments raised for the first time on appeal and must restrict its review to those arguments and the evidence presented to the trial court).
In conclusion, we affirm the Alabama trial court's decision to decline to exercise jurisdiction over the child-custody determination because the father failed to demonstrate that the Alabama trial court abused its discretion in weighing the factors enumerated in § 30-3B-207(b). The Alabama trial court's failure to communicate with the Nebraska trial court, in light of the posture of this particular case, was, if anything, harmless error. Because the father failed to raise the argument concerning divisible divorce to the Alabama trial court, we cannot reverse the Alabama trial court's judgment on the basis that that court failed to retain jurisdiction over the divorce action while declining to exercise jurisdiction over the child-custody determination.
NO-OPINION ORDER OF AFFIRMANCE OF JANUARY 18, 2008, WITH-DRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
THOMPSON, P.J., and BRYAN, J., concur.
PITTMAN, J., concurs specially.
MOORE, J., dissents, with writing.
PITTMAN, Judge, concurring specially.
I concur in the main opinion, which affirms the Alabama trial court's judgment and overrules the application for rehearing filed by the father. I write specially to stress that the Alabama trial court's specification of one particular ground for its decision (i.e., the father's voluntary submission to the Nebraska trial court's jurisdiction) does not warrant reversal even if the Alabama trial court's recitation of that ground was erroneous.
It is a fundamental proposition that "[t]he question to be determined by [an appellate] court is whether [a]judgment is correct, considering the evidence in [the] cause, not whether the ground upon which [the judgment] professes to proceed is tenable." Pan Am. Fire Cas. Co. v. DeKalb-Cherokee Counties Gas. Dist,289 Ala. 206, 213, 266 So.2d 763, 770 (1972) (emphasis added);see also Patton v. Cumberland Lake Country Club, Inc.,703 So.2d 376, 380 (Ala.Civ.App. 1997) ("this court reviews judgments and not opinions"). Although the Alabama trial court did not state its findings as to each of the factors listed in Ala. Code 1975, § 30-3B-207(b), the silence of the judgment as to those other factors compels the inference that that court, by implication, has determined that those other factors did not compel its retention of jurisdiction. See Ex parteOwen, 860 So.2d 877, 880 (Ala. 2003) ("[W]hen the trial judge makes no specific findings of fact as to an issue, we will assume that the judge has made findings necessary to support the judgment, unless those findings are clearly erroneous."). The main opinion correctly concludes that the father has failed to demonstrate an abuse of discretion with respect to that determination, and I therefore agree that no remand for further proceedings is necessary.
MOORE, Judge, dissenting.
I respectfully dissent from the affirmance of the Alabama trial court's judgment because I believe that that court exceeded its discretion in declining to exercise jurisdiction.
Both parties agree that Alabama has jurisdiction over the child-custody determination pursuant to § 30-3B-201(a), Ala. *Page 891 
Code 1975. However, as the main opinion points out, § 30-3B-207(b), Ala. Code 1975, provides:
 "(b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
 "(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
 "(2) The length of time the child has resided outside this state;
 "(3) The distance between the court in this state and the court in the state that would assume jurisdiction;
 "(4) The relative financial circumstances of the parties;
 "(5) Any agreement of the parties as to which state should assume jurisdiction;
 "(6) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
 "(7) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and
 "(8) The familiarity of the court of each state with the facts and issues in the pending litigation."
As set out in the main opinion, the Alabama trial court indicated in its judgment that it was basing its decision to decline to exercise jurisdiction on its finding "`that the [father had] voluntarily submitted himself to the jurisdiction of the [Nebraska trial court].'" 995 So.2d at 883. I note that, although the Alabama trial court could have determined that the father had submitted to the jurisdiction of the Nebraska trial court with regard to the issues addressed in the stipulation, there is no evidence indicating that the father agreed that the Nebraska trial court "should assume jurisdiction" with regard to the determination of "permanent" child custody.
Further, the plain language of § 30-3B-207(b) requires that the Alabama trial court "shall" consider all the factors enumerated in that section. See Ex parte homey,797 So.2d 427, 428 (Ala. 2001) (quoting Ex parte Prudential Ins.Co. of America, 721 So.2d 1135, 1138 (Ala. 1998)) ("`The word "shall" is clear and unambiguous and is imperative and mandatory.'"). From the plain language of its December 14, 2006, order, it is apparent that the Alabama trial court considered only one factor — "[a]ny agreement of the parties as to which state should assume jurisdiction." Ala. Code 1975, § 30-3B-207(b)(5). The Alabama trial court did not mention any other factor in its one-page order. The express recital of one statutory factor, coupled with the total absence of any reference to the other statutory factors, plainly indicates that the Alabama trial court did not consider those other factors as required.
Citing Tompkins v. Tompkins, 843 So.2d 759, 765
(Ala.Civ.App. 2002), the majority nevertheless concludes that the Alabama trial court actually did make the necessary findings regarding the other statutory factors. InTompkins, the father appealed a judgment awarding the mother custody of the parties' child. The father claimed that both parents had requested joint custody, thereby triggering the application of Ala. Code 1975, § 30-3-152(c), which provides that, if both parents request joint custody, the trial court should grant joint custody "unless the court makes specific findings as to why joint custody is not granted." This court *Page 892 
determined that the parties had not requested joint custody in the manner contemplated by the statute; therefore, the trial court did not err "in not making `specific findings' as to why it did not award the parties joint custody of the child."843 So.2d at 764. Turning to the propriety of the judgment awarding custody to the mother, the court then stated, "'[w]hen atrial court does not make specific findings of fact concerningan issue, an appellate court will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous.'"843 So.2d at 765 (quoting McGough v. McGough, 710 So.2d 452, 453
(Ala.Civ.App. 1997)) (emphasis added).
As stated by the court, the rule in Tompkins applies only "when a trial court does not make specific findings of fact concerning an issue." The factual issue before the Alabama trial court in deciding whether it was an inconvenient forum was "whether it is appropriate for the court of another state to exercise jurisdiction." Ala. Code 1975, § 30-3B-207(b). The Alabama trial court made specific findings of fact concerning that issue. The Alabama trial court expressly found that the parties had agreed to submit to the jurisdiction of another state and concluded from that lone fact that it was appropriate for the court in Nebraska to exercise jurisdiction. Unlike Tompkins, in this case we are not dealing with a situation in which a trial court has entered a judgment without stating its reasoning therefor. Instead, we are reviewing a case in which the trial court has explicitly stated its reasoning. As this court recently stated, "This court cannot discern the mental operation of a trial judge other than by the words contained in the trial [judge's] orders and judgments." J.W.J. v. P.K.R., [Ms. 2061017, March 28, 2008] ___ So.2d ___, ___(Ala.Civ.App. 2008). The words used by the Alabama trial court in this case exclude any notion that it considered all the statutory factors.
The majority opinion next asserts that the Alabama trial court did not err because it was not required to make any written findings of fact. See Ex parte Fann, 810 So.2d 631
(Ala. 2001). Although it may be true that a trial court is not required to make specific written findings of fact in ruling on a motion requesting that the court determine jurisdiction under § 30-3B-207, the trial court is plainly required to consider all the statutory factors. The trial court has no discretion in this regard. Therefore, when the trial court elects to enter specific findings of fact that omit reference to all but one statutory factor, thereby indicating that it failed to consider the other factors, it is plainly in derogation of the mandatory language of the statute.
As the majority opinion correctly points out, not every statutory factor will be present in every case,995 So.2d at 887, but the trial court must make a factual determination on all the contested factors. When the trial court makes a determination as to only one litigated factor, it plainly violates its statutory mandate to consider all the statutory factors. That error cannot be ameliorated by this court's review of the evidence to determine if the other statutory factors have or have not been established because the statute places the duty of resolving the factual conflicts regarding the factors on the trial court, not this court. Thus, when the trial court enters written findings of fact expressly relying on only one factor, though other factors are disputed, we must assume that the trial court erroneously failed to consider any of the other relevant litigated factors in reaching its decision, and we must reverse its judgment. *Page 893 
Based on the foregoing, I would reverse the Alabama trial court's judgment and remand this cause with instructions for it to reconsider whether it should decline to exercise jurisdiction, taking into consideration all the relevant factors enumerated in § 30-3B-207(b). I would also instruct the Alabama trial court that consent to jurisdiction with regard to a temporary-custody stipulation does not equate to an agreement that the Nebraska trial court may assume jurisdiction over the determination of "permanent" child-custody matters.
[1] For example, the first factor enumerated in § 30-3B-207(b) requires the trial court to consider "[w]hether domestic violence has occurred and is likely to continue in the future. . . ." In some cases, like this one, domestic abuse will not be an issue. Surely, the failure of the trial court to state that it need not consider that particular factor because of a lack of evidence of domestic violence would not cast its judgment reciting one or more of the other factors into doubt.