# CHARLES L. ETTER v. JUDY CAROLE ETTER

[No. 1401, September Term, 1978.]

*Decided September 11, 1979.*

The cause was argued before MOORE, LOWE and MACDANIEL, JJ.

*Michael L. Pullen* for appellant.

*John Severt,* with whom was *Joseph J. Wase* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

The questions presented on this appeal are whether, pursuant to the Uniform Child Custody Jurisdiction Act, Md. Ann. Code art. 16, §§ 184-207, (Supp. 1978), the Circuit Court

for Howard County (Fischer, J.) had jurisdiction, and properly exercised it, to resolve a custody dispute involving a child whose home had been with his father in Dover, Delaware. On the basis of the facts and circumstances disclosed in the record, and the provisions of the Act, we hold that the court was correct in exercising jurisdiction over the controversy.

# I

In November 1977, Judy Carole Etter, after years of marital strife, departed from her home in Dover, Delaware, leaving behind her husband, the appellant, and Troy, her 12-year old son. Thereafter, she established residence in Columbia, Maryland, where she secured a job as an accountant. During her separation from Troy, appellee maintained frequent contact with him. No custody decree had been issued by any court; Troy remained with his father by agreement of the parties.

Late in the evening of July 22, 1978, Troy, then 13 years of age, telephoned appellee and pleaded with her to come for him and take him to live with her in Maryland. In the early morning hours of July 23, she and Troy crossed into Maryland and proceeded to appellee's home in Columbia.

Court proceedings inevitably ensued. The record indicates that on Friday, August 11, 1978, the Circuit Court for Howard County signed an *ex parte* Order granting custody of Troy to appellee "during pendency of this proceeding." We are told that the court issued the Order after talking with appellee and with Troy, and after the office of the Clerk of the Court had closed. Appellant was not notified of the proceeding. On the same day, at 4:02 p.m., appellant filed a petition in the Family Court of Delaware seeking custody of the boy. The following Monday, August 14th, at 9:43 a.m., appellee's petition for "Sole and Exclusive Custody" was filed in the office of the Clerk of the Circuit Court for Howard County.[1] On August

---

1. The appellee's affidavit concerning "information as to child" required by § 191 of the Act stated in part, "I have no information of any custody proceeding concerning Troy Douglas Etter in this or any other state.... No other person has physical custody of Troy Douglas Etter but Charles L. Etter has indicated that he intends to seek custody or visitation rights with respect

16th, notice of the *ex parte* Order was sent to appellant. The Delaware court, after learning of the Maryland petition, and believing it had been filed first, by Order dated August 28, 1978, stayed further proceedings in Delaware.

A hearing was held in Maryland on September 20th before Judge Fischer. Appellant, although he had filed no responsive pleading to his wife's petition, was represented by counsel and appeared as a witness. Two of his neighbors from Dover, Delaware also testified. The court also heard the testimony of appellee and of five witnesses on her behalf. The boy was also a witness. At no time prior to or during the hearing were any statements made or actions taken challenging the validity of the *ex parte* temporary Order. At the conclusion of the hearing, the parties were permitted to submit memoranda on the jurisdictional question. The court filed its opinion on December 6th, in which it held that Maryland had jurisdiction and awarded custody to appellee.

On this appeal, Mr. Etter raises three issues. He contends that: the *ex parte* Order was void; Maryland had no subject matter jurisdiction; and, alternatively, the lower court should have declined jurisdiction so as to recognize and enforce the public policies underlying the Uniform Child Custody Act.

## II

Relying principally on Maryland Rule 170,[2] appellant first requests that we declare the *ex parte* Order of August 11, 1978 void because at the time of its issuance no pleadings were on file with the clerk. This Order, interlocutory in nature, granted temporary custody of Troy to appellant. Pursuant to Md. [Cts. & Jud. Proc.] Code Ann. § 12-303 (c)

---

to Troy Douglas Etter." The affidavit annexed to appellant's Delaware petition stated that, "To the best of his knowledge and belief, there are no custody proceedings concerning Troy pending in a court of this or any other state."

2. This Rule simply provides that an action in equity shall be commenced by *filing* a bill or petition or special case by consent under Rule 329; that *process* shall not be served upon any bill until the bill and exhibits are filed; and that no injunction or restraining order or orders appointing a receiver shall issue until instruments of record "necessary to show the character and extent of the plaintiff's interest" shall have been filed with the clerk.

(10) (Supp. 1978), a natural parent may appeal an interlocutory order that deprives him or her of the care and custody of his or her child. Appellant's trial counsel, who withdrew his appearance after the proceedings below, neither appealed this Order nor raised any questions as to its validity. The point is obviously moot.[3]

## III

Appellant strenuously contends that the lower court was without jurisdiction to determine custody. The Oregon Court of Appeals in *Carson v. Carson* aptly described the steps to be followed in determining jurisdiction and the propriety of its exercise under the Uniform Child Custody Jurisdiction Act [hereinafter cited as the Act]. It stated:

> "Under the Act the court must go through a *multistep process* in determining whether to exercise jurisdiction. *First* it must ascertain whether it has jurisdiction. . . . If it finds that there is jurisdiction, *then* the court must determine whether there is a custody proceeding pending or a decree in another state which presently has jurisdiction. If so, the . . . court must decline to exercise its jurisdiction. . . . *Finally,* assuming the court has jurisdiction and there is not a proceeding pending or a decree, the court then must determine . . . whether to exercise its jurisdiction because of convenient forum." (Emphasis added.)

565 P.2d 763, 764-65 (1977).

In Maryland, Section 186 of the Act sets forth the instances when a court of this State, competent to decide child custody matters, has jurisdiction to make a child custody determination. Md. Ann. Code art. 16, § 186 (Supp. 1978).

---

3. In any event, we would judicially notice that, all too often, on late Friday afternoons, judges in chambers are presented with pleadings and *ex parte* orders; and that such orders are sometimes signed after the clerk has locked the doors, and it is not until Monday morning that the papers are filed. That is indubitably what happened here. Rule 170 is far short of requiring that such an order be held a nullity.

Subsection (a) (2), relied upon by the court below,[4] confers jurisdiction if, *inter alia:*

"It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, *or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships. . . .*" (Emphasis added.)

It becomes apparent that the critical elements are (a) "a significant connection with [the] State" and (b) that "substantial evidence" be available in Maryland to show the child's present and future needs. One court has interpreted this "as meaning a high but not maximum degree of connection and access to evidence." *Carson v. Carson,* 565 P.2d at 767. Despite appellant's arguments to the contrary, the record here is replete with evidence showing that the mother and child had a strong connection with Maryland, that substantial evidence was available in Maryland concerning his needs, and that it would be in the best interests of Troy for the Maryland court to exercise jurisdiction. This is reflected in the comprehensive opinion of Judge Fischer. He stated in part:

"It is abundantly clear from the testimony of the parties and witnesses that Troy's best interests lie with his care and custody being with his mother. The difficult decision for this Court is whether this Court is the appropriate Court to make that decision.

Troy was until quite recently a citizen of the State of Delaware and that State has a paramount interest in Troy's welfare. It seems apparent from a full review of the Uniform Child Custody Act to which both Delaware and Maryland are signators that it

---

4. Although there was substantial evidence that the father had administered beatings to the boy at the home in Dover, the court did not base jurisdiction on the "emergency" provisions of § 186 (a) (3) or rely upon the "emergency" language of § 188 (a).

would not be unreasonable to reach the conclusion that Delaware is the appropriate forum in which to litigate Troy's custody. The Uniform Act was enacted to prevent parents from taking children from one jurisdiction to another in order to change the forum in which to determine custody. *But, in the present case, it appears that the Circuit Court for Howard County, Maryland is the proper court to exercise jurisdiction over the parties. The Circuit Court for Howard County meets the jurisdictional requirements of the Uniform Child Custody Jurisdiction Act.* Article 16 Sec. 186 (a) (2) of the Act provides that jurisdiction may be invoked where:

'it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships.'

*The facts of this case indicate that both the child and mother have significant connections with the State of Maryland. The mother has lived and worked in Maryland for nine months and she has acquired a single family dwelling as a residence for both her and Troy. Troy is attending a school in Maryland at Wilde Lake Middle School in Columbia and finding it personally rewarding, in a contrast to his attitude toward school in Delaware. Mrs. Etter and Troy have close family ties with two of the boy's maternal aunts and the boy and his mother have established close medical connections with Dr. Hayes, a psychologist and resident of Howard County. Dr. Hayes has reported that both Troy and Mrs. Etter must continue with their psychotherapy treatment so that both can recover from the effects of the marital strife.*

*As to the second requirement of Article 16 Sec. 186*

*(a) (2) there is available in this State substantial evidence concerning Troy's present or future care, protection, training and personal relationships.* Troy's mother lives in Maryland and he emphatically desires to remain with her. All of Troy's school records are in Maryland and Troy's psychologist, with whom Troy meets regularly, lives in Maryland. *It thus appears that the Circuit Court for Howard County, in the present and in the future, has optimum access to relevant evidence about the child and family.* In addition this does not appear to be the typical case of a parent unilaterally removing a child from one state to another. *In this case Troy was not snatched by a parent. He initiated the call for help to his mother to escape what now can be readily perceived as an intolerable situation.*

Troy's present situation with his mother is a vast improvement over his prior living arrangement with his father. The mother appears to be willing to mold her own life to fit a pattern more in keeping with Troy's best interest and needs. He appears to be content and happy in school and his anxieties are limited to the prospect of being required to return to his father. This is not to criticize Mr. Etter, he is obviously extremely interested in Troy. He has obtained counsel in both Delaware and Maryland and he travelled to this state to participate in the hearing. It may well be that the pressures which led to his mistreatment of Troy are beyond his control. In any event, Troy's best interests require that Troy remain in his present living arrangement. From a practical standpoint it would be pointless to return Troy to Delaware. The testimony showed that he tried to run away on two occasions with the intent to join his mother prior to July of 1978.

A young man like Troy cannot be required by force to live with his father if he finds it intolerable to do so. He will in the future, as he has done in the past, find a way to escape to live with his mother.

The Court will, therefore, retain jurisdiction over this matter and permit the father to have reasonable visitation with Troy upon application...." (Emphasis added.)

Appellant argues, however, that the lower court was "divested of subject matter jurisdiction" by virtue of Section 188 of the Act entitled, "Proceeding Pending in Another State." Subsection (a) provides:

"Except where the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or is otherwise neglected or dependent, a court of this State *shall not exercise its jurisdiction under this subtitle* if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subtitle, *unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.*" (Emphasis added.)

We disagree with appellant's contention for several reasons. First, it is a misreading of the quoted language. Clearly, section 188 (a) does not "divest" a court of jurisdiction once jurisdiction has been found under section 186 ("When court has jurisdiction"). It recognizes the *existence* of jurisdiction but provides that the court shall not *exercise* it, except in situations of abandonment or emergency or if the other proceeding has been stayed. Furthermore, it is plain from a reading of section 188 in its entirety that the mere fact of the pendency of an action in another state is not determinative of the responsibility of a Maryland court to withhold the exercise of its jurisdiction. The pendency of such other action must be *known* to the Maryland court. Our courts are, of course, required by section 188 (b) to examine the pleadings and consult the child registry established under section 198 in order to ascertain whether any proceedings with respect to the child are pending in other states or

elsewhere in Maryland. *See Paltrow v. Paltrow,* 37 Md. App. 191, 376 A.2d 1134 (1977), *aff'd* 282 Md. 413 (1978). Here, however, the respective proceedings — in Maryland and in Delaware — were initiated on the same afternoon, so that neither court could have become informed on that day of the other's case. The Maryland court issued a temporary custody order. When the Delaware court thereafter learned of the Maryland petition and order, it stayed its own proceedings, thus relieving the lower court, under the last phrase of section 188 (a), of any requirement that it not exercise its jurisdiction. The Judge of the Family Court of the State of Delaware wrote to the Judge of the Circuit Court for Howard County, correctly observing:

> "I certainly recognize that you have jurisdiction to intervene *absent any knowledge* of any pending proceedings in this Court, the home state of the child." (Emphasis added.)

Finally, we observe that section 194 of the Act entitled, "Custody decree binding and conclusive," must not be overlooked. That section reads:

> "*A custody decree rendered by a court of this State which had jurisdiction under § 186 binds all parties who have been served in this State or notified in accordance with the Maryland Rules of Procedure, or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard.* As to these parties the custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made unless and until that determination is modified pursuant to law, including the provisions of this subtitle." (Emphasis added.)

In the instant case, as previously noted, the father was represented by counsel and had a complete opportunity to participate fully in the proceedings below, both as to jurisdiction and the merits of the mother's petition for an award of custody.

## IV

Even if Maryland had jurisdiction, appellant argues alternatively that the public policy considerations expressed in sections 184, 189, and 190 of the Act, establish that subject matter jurisdiction rightfully existed in Delaware. In other words, he maintains that the lower court abused its discretion when it exercised jurisdiction. We do not agree.

With respect to section 184 ("Purpose and construction of subtitle"), it is contended that the provisions of subsection (a) (3) have been ignored. The Act there declares that the "general purposes" are to:

> "Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this State decline the exercise of jurisdiction when the child and his family have a closer connection with another state. . . ."

This declared purpose must be considered in relation to section 186 (a) (2), previously quoted, upon which the lower court based its finding of jurisdiction after a careful evaluation of "substantial evidence" concerning the boy's future care, protection, training, and personal relationships. The court's proper conclusion under the latter section involves no subversion of the purpose stated in section 184 (a) (3).

Next, appellant argues that pursuant to section 189 of the Act entitled, "Finding that court is inconvenient forum," Maryland should have declined jurisdiction. In determining whether a court is an inconvenient forum, section 189 (c) provides that the court "may take into account the following factors, among others":

> "(1) If another state is or recently was the child's home state;
> (2) If another state has a closer connection with

the child and his family or with the child and one or more of the contestants;

(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relation is more readily available in another state;

(4) If the parties have agreed on another forum which is no less appropriate; and

(5) If the exercise of jurisdiction by a court of this State would contravene any of the purposes in § 184."

While Delaware recently had been the child's home, we agree with the court below that factors (2) and (3) weighed substantially in Maryland's favor. Clearly, the court was mindful of these guidelines and, we believe, correctly applied them.

Section 190 of the Act provides that a court may decline jurisdiction "[i]f the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct. . . ." This section is designed to achieve the purpose of section 184 (a) (5), to "[d]eter abductions and other unilateral removals of children undertaken to obtain custody awards." Appellee did not "child-nap" Troy in the "classic" sense, as suggested in appellant's brief. Troy pleaded with her to rescue him. Moreover, appellee was cognizant of the physical abuse Troy had suffered. Her actions were those of a concerned, loving, and responsible parent.

We therefore reject appellant's final argument that the purposes and policies of the Act were thwarted when Maryland assumed and exercised jurisdiction in the matter of an award of custody of Troy Etter.

*Decree affirmed; costs to be paid by appellant.*