# CIRCUIT COURT OF THE CITY OF ROANOKE

In re Custody of Ottis Lee Cumbie
and Josephine Lynn Cumbie

April 30, 1987

Case Nos. CJ8700030, CJ8700031

By JUDGE CLIFFORD R. WECKSTEIN

In these cases, a father's petitions for custody of his son and daughter are before the Court on duly perfected appeals from decisions of the Juvenile and Domestic Relations District Court for the City of Roanoke. At the threshold, the Court must determine whether, under the Virginia Uniform Child Custody Jurisdiction Act (UCCJA), Virginia Code §§ 20-125 through 20-146, the exercise of jurisdiction over the issue of child custody is proper.

*Factual Background of the Case*

The children, Josephine and Ottis Cumbie, are the issue of the marriage of Gary G. Cumbie, the petitioner, and Maria Arzadon Cumbie, the respondent.

Mr. and Mrs. Cumbie were married on September 29, 1975, in Olongopo City, Zambaeles, Republic of the Philippines. Mr. Cumbie was on active duty in the United States Navy at the time of the marriage, and for more than ten years afterwards. Josephine was born on January 31, 1976, at the Subic Bay Naval Hospital in the Philippines; Ottis was born on August 14, 1981, at the Naval Regional Medical Center in San Diego, California. The petitioner is a native of Roanoke, and lived in Roanoke until he joined the Navy. His parents and siblings remain in the Roanoke area. The respondent is a native of the Philippines.

From the time of the marriage until Mr. Cumbie was discharged from the Navy, the parties lived in a number of jurisdictions. From the Philippines, where Josephine

was born, the parties moved to Texas, where they lived for some four years. They then moved to San Diego, California, where Ottis was born. In January of 1984, while residing in California, the parties separated; custody proceedings and an investigation of alleged child abuse by Mrs. Cumbie took place. The parties reconciled after a separation of one to three months.

In August of 1984, Mr. Cumbie was transferred to the Naval Air Station at Fallon, Nevada, and the family moved to Fallon. In approximately May of 1985, the parties purchased a home at 520 Anthony Lane, Fallon, Nevada. At some time thereafter, according to the testimony, Mrs. Cumbie quitclaimed her interest in the residence to Mr. Cumbie. This house, however, remained the family's home until August of 1986 and, so far as the evidence discloses, Mrs. Cumbie continues to reside in this home. In March of 1985, the parties separated. They reconciled in November of that year. During this separation, the parties and their children continued to reside in Fallon.

Mr. Cumbie was discharged from the Navy on August 11, 1986.

According to Mr. Cumbie's testimony, his "residence," for the military's record-keeping purposes, remained in Texas until his discharge from military service.

The Court has heard considerable credible testimony, and received substantial documentary evidence, which tends to demonstrate that the children (and particularly the daughter) have been subjected to and are threatened with mistreatment or abuse by the respondent, the natural mother. Mr. Cumbie testified that, as a result of the mother's treatment of the children, and of her threats to depart with the children, he determined that it was necessary to remove the children from Mrs. Cumbie and leave the area.

Thereupon, on approximately August 22, 1986, Mr. Cumbie took the children and departed from Nevada, heading for his family's home in Virginia. He and the children arrived at his parents' home, in Roanoke, on September 19, 1986. They have resided with Mr. Cumbie's parents since that date.

Mr. Cumbie did not inform his wife that he was leaving, or that he was taking the children. Mr. Cumbie testified that he left Nevada "abruptly," and that he notified Mrs. Cumbie of the children's whereabouts some forty

days later. Both of the children had attended school in Fallon, Nevada, before coming to Virginia; since coming to Virginia, both of the children have attended school in Roanoke.

### Procedural Background of the Case

On September 25, 1986, six days after arriving in Virginia, Mr. Cumbie filed the instant custody petitions in the Juvenile and Domestic Relations District Court for the City of Roanoke. At that time, no other custody proceedings were pending.

On October 8, 1986, Mrs. Cumbie filed suit for divorce in Nevada, seeking, *inter alia*, child custody. On January 12, 1987, Mr. Cumbie filed an answer in the Nevada divorce suit, *pro se*, appearing generally, and alleging that custody jurisdiction would properly be in the City of Roanoke, Virginia.

Mr. Cumbie is apparently properly a party to the suit in Nevada. Mrs. Cumbie is properly before this Court, having received legal and timely notice in accordance with Virginia law, and, in particular, in accordance with Code § 20-128(A)(2a) and (B). Both the Virginia and Nevada cases are "custody proceedings," within the meaning of the UCCJA, Code § 20-125(3).

Mrs. Cumbie is a resident of Nevada. Mr. Cumbie resided in Virginia when the custody petitions were filed, has remained in Virginia since that time, and has evidenced the intention to remain in Virginia, as a domiciliary of this state. The children are, of course, present in Virginia at this time. Once the judges in Virginia (the Roanoke City Juvenile and Domestic Relations District Court) and Nevada (the Third Judicial District Court) became aware that there were custody proceedings pending in both Courts, each judge proceeded, in accordance with the UCCJA, Code § 20-129, to communicate with the other. Prior to a jurisdictional determination having been made, the Virginia judge had granted temporary custody to the father.

Under the UCCJA, the Court in which the first petition was filed, the Virginia Juvenile and District Relations District Court, should have proceeded to make a jurisdictional determination, Code § 20-129(C). In fact, the Nevada Court proceeded to consider the question of jurisdiction,

and to conclude that the more appropriate forum for custody determination was Nevada. This decision was communicated to the Virginia judge. The Virginia judge acquiesced in the decision made by the Nevada judge, and voided his temporary custody order "inasmuch as the Courts in the State of Nevada have assumed jurisdiction of the issue of custody."

Under Virginia law, the petitioner is entitled to a trial *de novo* in this Court, which requires this Court to make a jurisdictional determination completely independent of that made by the District Court. This Court must first determine whether it has jurisdiction at all under the UCCJA; assuming that Virginia has jurisdiction under that statute, the Court must then determine whether it should "decline to exercise its jurisdiction" in the event that another Court with UCCJA jurisdiction "is a more appropriate forum."

### UCCJA Considerations

Virginia Code § 20-126 sets forth the "grounds for jurisdiction" under the UCCJA. Under Code § 20-126, I find that both Virginia and Nevada have jurisdiction to decide the custody of the children.

The children are physically present in Virginia. There is available in this state substantial evidence concerning the children's present care, protection, training, and personal relationships. The Court has heard evidence from which it concluded that the entry of a preliminary protective order, under the Juvenile Court Law, was necessary in an emergency to protect the children because they had been subjected to or threatened with mistreatment or abuse. Mr. Cumbie has significant connection with this state, the jurisdiction in which he grew up, in which his parents and siblings continue to reside, and in which he now lives and works.

Substantial evidence concerning the children's past care, protection, training and personal relationships is available in Nevada. Nevada is the "home state" of the children, within the meaning of Code §§ 20-125 and 20-126, as Mr. Cumbie concedes. Nevada is the state in which the children had resided for slightly more than two years prior to the commencement of these proceedings.

Nevada is the state with which the children had "significant connections" at the time these proceedings were commenced.

Mr. Cumbie vigorously argues that, since he has a "significant connection" with Virginia, since "substantial evidence" is available in Virginia to show the children's present and future needs, and since credible evidence has been presented to demonstrate that placement with the mother would threaten the children with mistreatment or abuse, Virginia should exercise its jurisdiction over custody. Mr. Cumbie has furnished the Court with authorities from a number of states which support the position he takes. *See Eher v. Eher,* 405 A.2d 760 (Md. App. 1979); *Mitchell v. Mitchell,* 458 N.Y.S. Supp. 2d 807 (Sup. 1982); *Hansen v. Hansen,* 327 N.W.2d 47 (S.D. 1982); *Vanneck v. Vanneck,* 404 N.E.2d 1278 (N.Y. 1980); *Priscilla S. v. Albert B.,* 424 N.Y.S.2d 613 (Fam. 1980); *Breneman v. Breneman,* 284 N.W.2d 804 (Mich. App. 1979).

Mr. Cumbie has also argued that it is in the best interests of the children for Virginia to continue to exercise custody jurisdiction, since the children have now completed most of the school year in Virginia, and appear to be thriving in their grandparents' home. Mr. Cumbie concedes that the Court must look to the situation as it existed on the date the petitions were filed, in making its determination whether to decline to exercise jurisdiction.

In *Middleton v. Middleton,* 227 Va. 82, 314 S.E.2d 362 (1984), the Virginia Supreme Court made its only interpretation and application to date of the UCCJA. As the Supreme Court noted,

> the Virginia UCCJA was enacted to avoid jurisdictional competition and conflict with courts of other states in matters of child custody; to promote cooperation with courts of other states so that a custody decree is rendered in a state which can best decide the issue in the interest of the child; to assure that litigation over the custody of a child ordinarily occurs in the state that is most closely connected with the child and his family and where significant evidence concerning the care, protection, training and personal relationships is most readily available, to assure that the courts

> of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state; to discourage continuing controversies over child custody; to deter abductions and other unilateral removals of children undertaken to obtain custody awards;
>
> . . . .

*Id*. 227 Va. at 93. "Under the UCCJA, physical presence of the child as a jurisdictional basis in all but the most extreme cases has been eliminated. . . . Under the UCCJA, custody ordinarily is to be determined where the child has the closest contacts. . . ." *Id*. at 97.

In *Middleton*, the Court also noted that it could not:

> overlook the "child snatching" aspect of the case in order to be consistent with the general purposes of the UCCJA. While the father did not "snatch" the children in the true sense of the word, he engaged in an equivalent act by refusing to return them in violation of a visitation agreement; he procured a tactical advantage by his conduct. If we approve the retention of jurisdiction by the trial court, it will tend to encourage such conduct in the future, contrary to one of the principal purposes of the UCCJA.

*Id*. at 95-96.

### Conclusion

Under the UCCJA, and particularly in light of the Supreme Court's language and holdings in *Middleton*, this Court is of opinion that Nevada is a more appropriate forum for custody litigation than is Virginia. Nevada is, as noted, the "home state" of the children for UCCJA purposes; Nevada has a "closer connection" with the children than does Virginia. Mr. Cumbie's primary allegations about his wife's relative unfitness to be the custodian of the children arise from conduct in Nevada, and in California, a state that borders on Nevada. Assuming that Mr. Cumbie continues to reside in Virginia, and Mrs. Cumbie

continues to reside in Nevada, whichever Court makes a custody determination will need to hear evidence about living conditions and future plans in the other jurisdiction. In view of the family's closer connection to Nevada, and the more substantial past evidence which exists in Nevada, I think it more appropriate that the Nevada Court hear evidence as to the Virginia living circumstances, than that the Virginia Court hear evidence as to the Nevada circumstances.

I also note that Mr. Cumbie testified that, during a prior separation, the same Nevada Court in which the divorce is pending had entered custody orders. Nevada clearly retains custody jurisdiction, under its own laws, as the Nevada Court has found; Nevada also retains a "significant connection" basis for jurisdiction. Although the original Nevada orders were mooted by the reconciliation of the parties, I am of the opinion that the spirit of the UCCJA is most closely followed when jurisdictional deference is given to the state which had originally acted, so long as it retains significant connections and jurisdiction under its own laws. *Cf. Meade v. Meade*, 812 F.2d 1473 (4th Cir., March 3, 1987). *See also* Code Section 20-136, which requires Virginia's courts to "recognize and enforce" custody decrees made by a Court of another state "which has assumed jurisdiction under statutory provisions substantially in accordance with [the Virginia UCCJA]. . . ." Although the Nevada Court has not yet made a custody order, it has "assumed jurisdiction" under the UCCJA. Notwithstanding the fact that the Nevada Court should have deferred this decision until a jurisdictional determination was made by Virginia Court, Code § 20-129(C), I am again of the opinion that the purposes of the UCCJA are best served when deference is given to the foreign Court's decision that it should assume jurisdiction. This is particularly so when, as here, I am satisfied that the foreign Court's decision was clearly correct.

This Court is certainly concerned, from the evidence, about possible threats to the well-being of the children if they should be placed with the mother in Nevada. However, I am satisfied that the Courts of the State of Nevada are fully as capable as are the Courts of Virginia of exercising their discretion to protect the best interests, health, welfare, and well being of the children.

Mr. Cumbie's attorney has argued that, for this Court to decline to exercise continuing jurisdiction, might result in further disruption of the children's lives, late in the school year, as their mother might engage in "snatching," to return the children to Nevada, in the absence of any custody order. I am cognizant of the harm that this might cause the children; I am satisfied that the Nevada Judge is equally cognizant of such harm. I also believe that this concern can be addressed by the Virginia Court at this time, even though Virginia will hereafter decline to exercise jurisdiction.

In consideration of all of the facts and circumstances of the case, the Court is therefore going to make the following order:

First, the Preliminary Protective Order previously entered will be vacated.

Second, in order to protect the interests of the children, the Court will order that temporary custody of the children be with Mr. Cumbie. However, the Court will further order that this temporary custody order will terminate immediately upon the entry of any order by the Third Judicial District Court of Nevada respecting the custody of the children.

Third, the Court will find that Nevada is a more appropriate forum for custody litigation than is Virginia, and the Court will accordingly decline to exercise further jurisdiction over the custody of the infant children.