960 A.2d 637

**Jennifer KREBS**

v.

**Chad KREBS.**

**No. 0444, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Nov. 26, 2008.

104

Melissa R. Kilmer, Salisbury, for Appellant.

Barbara R. Trader, Salisbury, for Appellee.

Panel: EYLER, JAMES R., WOODWARD and LAWRENCE F. RODOWSKY, (retired, specially assigned), JJ.

RODOWSKY, J.

This is an interstate child custody dispute involving jurisdiction to enter the initial custody order. Arizona is the domicile of the mother, the appellant, Jennifer Krebs (Ms. Krebs). Maryland is the domicile of the father, the appellee, Chad Krebs (Mr. Krebs). Jurisdiction is governed by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) that was promulgated in 1997 by the National Conference of Commissioners on Uniform State Laws (the Commissioners). *See* 9, Part IA, U.L.A. 655 (1999). Maryland adopted the UCCJEA by Chapter 502 of the Acts of 2004. The Maryland version is codified in Maryland Code (1984, 2006 Repl.Vol.), Title 9.5 of the Family Law Article (FL). Arizona adopted the UCCJEA effective January 1, 2001. 9, Part IA, U.L.A., 2008 Cum.Supp. at 92.

On July 10, 2007, Mr. Krebs filed for an absolute divorce from Ms. Krebs in the Circuit Court for Worcester County. By a motion filed August 2, 2007, he sought emergency custody of the couple's two children. The children's home state was Arizona, but they were then visiting with their father. Before Ms. Krebs was served with the complaint or the motion, the court granted Mr. Krebs temporary custody of the two children, pending trial on the merits. The merits were heard at a trial on March 28, 2008, at which Ms. Krebs testified and was represented by counsel. The court granted Mr. Krebs sole legal and physical custody of the children, with reasonable visitation by Ms. Krebs.[1] Ms. Krebs appeals the custody determination and presents two questions for our review, the order of which we have reversed:

I. "Did the trial court err when it granted custody to the Appellee ex parte and did it further err by failing to hold a pendente lite custody hearing and did those errors amount to a denial of the appellant's due process rights?"

II. "Did the trial court err when it found that Maryland had jurisdiction to make the child custody determination under the UCCJEA?"

## Facts and Procedural History

The parties were married in 1996 in Las Vegas, Nevada. The marriage produced two children: Tyler Michael Krebs, born on April 26, 1997, and Caleb John Krebs, born on February 11, 2003. The family resided in Arizona until Mr. Krebs, on June 24, 2006, left them and relocated to Worcester County, Maryland, where his brother resided. Ms. Krebs continued as the caregiver for the children. On May 25, 2007, Mr. Krebs picked up his children in Phoenix for a summer visit in Maryland. After Mr. Krebs had completed one year's residence,[2] he filed for an absolute divorce in Worcester

---

1. Mr. Krebs was also granted a limited divorce.

2. FL § 7–101(a) requires one year's residence in this State to file for divorce here, when the grounds for divorce occurred out-of-state.

County on July 10, 2007. At Mr. Krebs's direction, a writ of summons was issued for service by a private process server on Ms. Krebs at the address of a mortgage company in Phoenix. That process and the complaint were received by the process server in Phoenix on July 12, 2007, but she was unable to serve Ms. Krebs.

Sometime after Mr. Krebs left home, Ms. Krebs and her sons had moved to Colorado. She resumed residing in Arizona after her sons had gone to visit with their father. Beginning in July 2007, Ms. Krebs lived with a female friend in Buckeye, Arizona. During the summer of 2007, Ms. Krebs routinely would telephone her sons at the home of the woman with whom Mr. Krebs was living. Ms. Krebs testified at the merits hearing that Tyler "was calling me saying, mom, you have a private investigator looking for you, are you hiding from the cops?" Ms. Krebs acknowledged that "it just kind of freaked me out and so I didn't give him [Mr. Krebs] my address and I should have."

Meanwhile, following his instituting the divorce action, Mr. Krebs became concerned for his sons' safety and best interests if they returned to Ms. Krebs in Arizona. On August 2, 2007, he moved in the divorce action for emergency custody of the two children. There is no certificate of service on the motion. By order of August 3, the court in Worcester County set the motion for hearing on August 23, 2007, together with a scheduling conference. The court clerk's notice of the date for these proceedings was mailed to Ms. Krebs at the mortgage company address, the only address appearing for her at that time in the court file.

That same day, August 3, 2007, Ms. Krebs moved for temporary child custody, child support, and spousal maintenance in the Superior Court of Arizona for Maricopa County.

The emergency hearing in Worcester County was held on August 23, 2008. Ms. Krebs was not present in person or by counsel. The presiding master noted that Ms. Krebs had not yet been served with either the complaint for divorce or the motion for temporary custody. She proceeded with the hear-

ing, but required that efforts be continued to serve Ms. Krebs and stated that the hearing was only a *pendente lite* matter.

At the hearing, Mr. Krebs testified that he had contacted the company that Ms. Krebs had told him was her place of employment, but she no longer worked there. He claimed that Ms. Krebs had recently been evicted from her apartment and that he had no address for where she was living, so that, if the children returned to Arizona, they would have no suitable living arrangements. Moreover, Mr. Krebs said that, in a telephone conversation with Ms. Krebs, she had threatened that she was coming to Maryland to get the children and take them back to Arizona. He testified he had received a phone call from a detective in Arizona notifying him that a convicted felon had been living with Ms. Krebs and the children. He expressed the belief that Ms. Krebs was using drugs, because, upon the children's arrival in Maryland, Mr. Krebs had found a pack of rolling papers in one of their backpacks. Also, Ms. Krebs's sister, who lives in Phoenix, had told him that Ms. Krebs was using marijuana and possibly crystal meth.

The master found that "an emergency existed which required immediate temporary relief, and recommended that [Mr. Krebs] have *pendente lite* legal and physical custody of both boys, until the trial on the merits at a later date." The circuit court accepted the master's recommendations in an order dated August 29, 2007.

Back to Arizona. On September 4, 2007, Judge Harriet Chavez of the Maricopa County Court met with Ms. Krebs in a scheduled resolution management conference. Mr. Krebs's private process server served Ms. Krebs with the Maryland divorce complaint at the courthouse on that day. Later that day, a UCCJEA telephone conference was set for September 11, to resolve jurisdiction over child custody. Prior to that conference, on September 7, Ms. Krebs, in proper person, filed a statement of position in Arizona, with a copy by mail to Mr. Krebs. She submitted that Arizona had home state jurisdiction over the children and that Mr. Krebs's failure to return the children was unjustified. Further, on the day before the

conference, Ms. Krebs, in proper person, faxed to Mr. Krebs and his attorney a response to the motion filed in Maryland by Mr. Krebs for emergency custody. That response disputed the material allegations of Mr. Krebs's motion.[3]

The UCCJEA telephone conference was held on September 11, 2007, between the Arizona judge and the Maryland master. Also present in Maryland were Mr. Krebs, his counsel, and a court reporter. Ms. Krebs was not present at the Arizona end of the conference. It was agreed that Arizona was the home state. The master asserted that Maryland was the more convenient forum and that the children at that time had significant connections to Maryland. The Arizona court agreed and declined to exercise custody jurisdiction in favor of Maryland. Two days later, the Circuit Court for Worcester County approved the master's report to that effect.[4] Three days later, at a meeting with the Arizona judge, Ms. Krebs was advised of the conclusion reached at the UCCJEA conference, and she was given all the documents faxed to that court from Maryland. The Arizona court then dismissed Ms. Krebs's action.

On October 12, 2007, Ms. Krebs, through counsel, appeared in the Maryland action. At her request, the court postponed a November 7, 2007 scheduling conference and the November 28, 2007 trial date. The former was held on December 20, 2007, and the merits trial was held on March 28, 2008. Ms. Krebs's initial filings included a motion to revise the temporary custody ruling. That motion was denied on November 7, 2007. On November 26, 2007, Ms. Krebs moved for a *penden-*

---

3. We are unable to find in the record how or when Ms. Krebs obtained a copy of the motion that had been filed in Maryland. That void in the record, however, is immaterial in light of our holding on Issue I.

4. Ms. Krebs notes that, in the master's report to the circuit court, she referred to Arizona and Maryland as possessing "concurrent jurisdiction." This statement, if intended to be a technical legal analysis, was incorrect. Under the UCCJEA, Arizona had exclusive initial jurisdiction, as the home state. The misstatement in the master's report is harmless error, because it was cured by the Arizona court's declining to exercise its jurisdiction on forum non conveniens grounds.

*te lite* custody hearing to be held on December 20, 2008, when she would be in Maryland for the postponed scheduling conference. That motion was denied on December 19.

At the conclusion of the merits hearing of March 28, 2008, the court, ruling orally from the bench, awarded custody to Mr. Krebs with visitation to Ms. Krebs. Essentially, the court found stability for the children in Worcester County but instability in Ms. Krebs's life.[5] This judgment is not directly challenged on this appeal.

Additional facts will be stated in the discussion of the issues.

## I

■ Ms. Krebs submits that her due process rights were violated by the Worcester County court's (A) holding, without notice to her, an *ex parte* emergency hearing at which custody *pendente lite* was awarded, and (B) declining to hold a *pendente lite* hearing when she requested one. She contends that, even if there were an emergency, the court should have done no more at the *ex parte* hearing than establish custody until a hearing could be held after notice to her and at which custody, pending the merits trial, would be established.

These issues raised by Ms. Krebs are moot. If we assume, *arguendo*, that Ms. Krebs would prevail in her contention that the court should not have issued a *pendente lite* order until

---

5. The court in part found the following:

"Since the time that Mr. Krebs has had the children in his custody there still is an element of instability in the life of Mrs. Krebs as far as her jobs go, her housing, and some other choices that she has made and the main one that I'm pointing to is the pregnancy. And it's not a problem that Mrs. Krebs is pregnant, certainly people have more—single parents have more than two children and they're more than able to take care of them. The fact that she is pregnant alone is not what concerns the Court. What concerns the Court is the manner in which she became pregnant to the point where the father is in places unknown and his involvement with this child is probably nonexistent, so that certainly perpetuates the instability.

"The one fact that this Court is able to be satisfied with and be able to rely on is the stability that has been created in Pocomoke for the children by Mr. Krebs."

she had notice and an opportunity to appear at the hearing, the only relief that this Court could grant would be to vacate the *pendente lite* order and remand the matter for a new hearing at which she would have the opportunity to be present. But, Ms. Krebs has had a plenary hearing on the merits. Consequently, the issue is moot. *See In re Damien F. & Terrell F.*, 182 Md.App. 546, 958 A.2d 402 (2008) (recognizing, in CINA case, that issue of parents' absence from emergency shelter hearing was mooted by subsequent adjudicatory hearing at which child was found to be CINA); *National Collegiate Athletic Ass'n v. Tucker*, 300 Md. 156, 476 A.2d 1160 (1984) (finding moot appeal from denial of preliminary injunction against certain players participating in inter-collegiate lacrosse games, where season ended before appeal could be heard); *Campbell v. Lake Hallowell Homeowners Ass'n*, 152 Md.App. 139, 831 A.2d 465, *cert. denied*, 378 Md. 614, 837 A.2d 926 (2003) (holding to be moot former homeowners' appeal from injunction, obtained by homeowners association against covenant violations, where appellant homeowners had moved from the development); *Etter v. Etter*, 43 Md.App. 395, 397–98, 405 A.2d 760, 762 (1979) (holding to be moot parent's contention that *ex parte* custody order was void, because issued prior to court clerk's file being opened, where court subsequently held full hearing on jurisdictional issue).

Further, the *ex parte* order of which Ms. Krebs complains expired by its terms when there was a determination of custody following the merits hearing. Thus, the instant matter is analogous to a case that is rendered moot because an injunction expired before its grant could be reviewed on appeal. *See Teferi v. Dupont Plaza Assocs.*, 77 Md.App. 566, 580, 551 A.2d 477, 484–85 (1989) (finding moot appeal from *ex parte* injunction that dissolved ten days after its entry).

## II

■ Ms. Krebs also contends that the factors listed in the UCCJEA for determining whether a forum is inconvenient have not been applied or have been misapplied. She submits that Arizona is the more appropriate forum. She asks that we

reverse the custody judgment of the Circuit Court for Worcester County and remand this case to that court with instructions to limit its judgment to an award of temporary custody only and to direct Mr. Krebs to go to the children's home state of Arizona for a determination of permanent custody.

It is undisputed that the jurisdiction of the Maryland court in this case rests exclusively on FL § 9.5–201(a)(2) [UCCJEA § 201(a)(2)], which in relevant part reads:

"[A] court of this State has jurisdiction to make an initial child custody determination only if:

. . . .

"(2) . . . [A] court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under § 9.5–207 . . . of this subtitle, and:

"(i) . . . the child and at least one parent . . . have a significant connection with this State other than mere physical presence; and

"(ii) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships[.]"

FL § 9.5–207 is, substantially, UCCJEA § 207 and Arizona Revised Statutes (A.R.S.) § 25–1037. The latter statute reads:

" § 25–1037. Inconvenient forum

"A. A court of this state that has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. The issue of inconvenient forum may be raised on motion of a party, the court's own motion or request of another court.

"B. Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to

submit information and shall consider all relevant factors including:

"1. Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child.

"2. The length of time the child has resided outside this state.

"3. The distance between the court in this state and the court in the state that would assume jurisdiction.

"4. The relative financial circumstances of the parties.

"5. Any agreement of the parties as to which state should assume jurisdiction.

"6. The nature and location of the evidence required to resolve the pending litigation, including testimony of the child.

"7. The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence.

"8. The familiarity of the court of each state with the facts and issues in the pending litigation." [6]

Ms. Krebs recognizes that, "[a]s the home state, the decision that Arizona was an inconvenient forum and that Maryland was a more convenient forum must be made by the

---

**6.** The comparable provisions of FL § 9.5–207 are as follows:

"(a) *Action if this State is inconvenient forum.*—(1) A court of this State that has jurisdiction under this title to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.

"(2) The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court.

"(b) *Factors in determination.*—(1) Before determining whether it is an inconvenient forum, a court of this State shall consider whether it is appropriate for a court of another state to exercise jurisdiction.

"(2) For the purpose under paragraph (1) of this subsection, the court shall allow the parties to submit information and shall consider all relevant factors, including[.]"

The eight factors listed in the Maryland statute are identical to the eight factors listed in the Arizona statute.

Arizona court and not the Maryland court." Appellant's Brief at 11. We agree. Ms. Krebs further argues that, in deciding whether it, or the Maryland court, was the more convenient forum, the Arizona court erred because it did not consider the eight factors listed in A.R.S. § 25–1037. The argument is based on the transcript of the telephone conference held on September 11, 2007, between the two courts. That transcript does not reflect any "checklist" review of factors listed in the statute.

Ms. Krebs makes her argument to the wrong court. In reviewing the judgment of the Circuit Court for Worcester County, this Court does not have the power or authority to conclude, or to enforce a conclusion, that the Superior Court of Arizona for Maricopa County erred in applying A.R.S. § 25–1037. If Ms. Krebs was aggrieved by that court's declination of jurisdiction, the appropriate review would be in the appellate courts of Arizona.

The statutory language is clear. A Maryland court can acquire initial child custody determination jurisdiction if "a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under [FL] § 9.5–207." FL § 9.5–201(a)(2). In the reverse of the situation presented here, FL § 9.5–207(a) provides that, if a court of this State has jurisdiction to make a child custody determination, it "may decline to exercise its jurisdiction at any time if *it* determines that it is an inconvenient forum ... and that a court of another state is a more appropriate forum." (Emphasis added). Similarly, A.R.S. § 25–1037 empowers a court of Arizona to "decline to exercise its jurisdiction at any time if *it* determines that it is an inconvenient forum ... and that a court of another state is a more appropriate forum." (Emphasis added).

Our reading is consistent with comments by the Commissioners to §§ 201 and 207 of the UCCJEA. As to UCCJEA § 201, "Initial Child–Custody Jurisdiction" [FL § 9.5–201 and A.R. S. § 25–1031], the Commissioners said that "a significant connection State may assume jurisdiction only when there is

no home State or when *the home State decides* that the significant connection State would be a more appropriate forum under Section 207 or 208." 9, Part IA, U.L.A. at 672 (emphasis added). As to UCCJEA § 207, the Commissioners said:

"It [§ 207] authorizes courts to decide that another State is in a better position to make the custody determination, taking into consideration the relative circumstances of the parties. If so, the court may defer to the other State."

9, Part IA, U.L.A. at 683.

The decision arising under the UCCJEA that, insofar as our research discloses, is most analogous to the instant matter is *Welch–Doden v. Roberts,* 202 Ariz. 201, 42 P.3d 1166 (2002). It involved a mother and child who had moved back and forth between Arizona and Oklahoma. The mother sued for custody in Arizona, and the father sued for custody in Oklahoma. After the Arizona and Oklahoma judges had conferred, the Arizona "trial judge determined," 43 P.3d at 1168, that Oklahoma had jurisdiction as the child's home state. In subsequent proceedings in Oklahoma, the court there awarded custody to the father. Meanwhile the mother had appealed in Arizona.

After affirming that Oklahoma was the home state, the court considered and rejected the mother's argument that the Arizona trial court nevertheless should have conducted "a hearing to determine if [home state] jurisdiction was in the child's best interests." *Id.* at 1174. Looking to the plain language of A.R.S. § 25–1031(A) [FL 9.5–201(a)West's Ann. Md.Code, Family Law, § ], the court said that that statute "provides no possibility of having competing claims of jurisdiction when there is a home state." *Id.* Indeed, the statute "provide[s] a state that is *not* the home state with jurisdiction only if there is no home state or the home state has declined to exercise that jurisdiction." *Id.*

The mother argued that the child's connection with her and their connection with Arizona required a best interests analy-

sis by the Arizona trial court. In response, the appellate court said:

> "Mother's argument does not consider that the UCCJEA expressly provides for a factual hearing *in the home state* in which that state may decline to exercise its jurisdiction and allow another jurisdiction to proceed. A.R.S. § 25–1037 [FL § 9.5–207]. This hearing may include a 'best interests' determination."

*Id.* at 1175. " 'Best interests' may be fully explored and considered in the context of a request under A.R.S. § 25–1037." *Id.* (footnote omitted). That statute, like FL § 9.5–207, is the UCCJEA inconvenient forum provision.

The Arizona Court of Appeals then explained the workings of the inconvenient forum provision, saying:

> "¶ 44 The issue of an inconvenient forum 'may be raised on motion of a party, the court's own motion or request of another court.' A.R.S. § 25–1037(A). Any such request, however, must be pursued in Oklahoma rather than Arizona, as Oklahoma has home state jurisdiction pursuant to A.R.S. § 25–1031(A)(1). This is critical: To allow the state without home state jurisdiction to conduct the hearing would lead to the jurisdictional competition the drafters sought to avoid. Thus the equitable arguments that mother wishes to pursue are not eliminated, but are merely re-directed to the home state. If she chooses, mother can ask the Oklahoma court to relinquish jurisdiction.
>
> "¶ 45 Accordingly, mother's argument that the trial judge erred in not considering the 'best interests' of the child, when dealing with a jurisdictional question under § 25–1031(A)(1), is wrong. The trial judge correctly determined that this was an issue for the Oklahoma court."

*Id.* at 1176. In the case before us, any claim of error by the trial court in the home state of the Krebs children should have been submitted for appropriate error review in Arizona.

Our conclusion is also consistent with other decisions applying the UCCJEA in which an aggrieved parent sought appellate review in the state of the court that had deferred, or

refused to defer, its exclusive initial or continuing jurisdiction to a court in another state. *See Ramsey v. Ramsey,* 995 So.2d 881 (Ala.Civ.App.2008) [2008 WL 2152565]; *Griffith v. Tressel,* 394 N.J.Super. 128, 925 A.2d 702 (2007); *Cole v. Cushman,* 946 A.2d 430 (Me.2008); *Fickinger v. Fickinger,* 342 Mont. 552, 182 P.3d 763, 2008 WL 726126 (Mont.2008); *Horgan v. Romans,* 366 Ill.App.3d 180, 303 Ill.Dec. 311, 851 N.E.2d 209 (2006); *Shanoski v. Miller,* 780 A.2d 275 (Me.2001). *See also Lippman v. PerhamLippman,* 2006 WL 852169 (Conn.Super. Fairfield District 2006).[7]

Similarly, this Court reviewed and affirmed a determination by the Circuit Court for Baltimore City to decline jurisdiction in favor of Hawaii, on forum non conveniens grounds. *See Cronin v. Camilleri,* 101 Md.App. 699, 648 A.2d 694 (1994). Jurisdiction was found to lie in Maryland, under provisions of the then applicable Uniform Child Custody Jurisdiction Act (UCCJA), including its home state provision. *Id.* at 704, 648 A.2d at 697. *See* Maryland Code (1984, 1999 Repl.Vol.), FL § 9–204(a)(1)(i).

Ms. Krebs relies upon *Harris v. Simmons,* 110 Md.App. 95, 676 A.2d 944, *cert. denied,* 343 Md. 680, 684 A.2d 454 (1996), as supporting the proposition that a court in this State can conclude that a court in another state rendered an erroneous decision concerning child custody. In that case, the dispute was between a mother in Maryland and maternal grandparents in South Carolina. The mother had sent her six year old daughter, Brittany, to be cared for temporarily by the grand-

---

7. The foregoing cases are to be distinguished from cases in which the appellant contends that the trial court in the forum state acted without obtaining jurisdiction because the deferral by a foreign court was ineffective. *See McNabb v. McNabb,* 31 Kan.App.2d 398, 65 P.3d 1068 (2003) (holding that Kansas court acquired no subject matter jurisdiction where Virginia court reconsidered its deferral to Kansas as the more convenient forum prior to the Kansas court's having acted in exercise of that jurisdiction); *In re McCoy,* 52 S.W.3d 297 (Tex.App. 2001) (holding that, where Qatar deferred custody decision to Texas, as the more convenient forum, Texas acquired no subject matter jurisdiction because, prior to institution of a custody action in Texas, Arkansas acquired home state jurisdiction).

parents following the birth of the mother's second child. Finding evidence of physical child abuse on Brittany, the grandparents obtained an emergency custody order from a South Carolina court. Based on that order, and that court's conclusion that Brittany had a significant connection with South Carolina, that court later entered an order awarding permanent custody to the grandparents. This Court declined to give full faith and credit to the South Carolina judgment, because South Carolina had no jurisdiction permanently to determine custody.

Applying the UCCJA, and many cases decided under the UCCJA, this Court concluded that the temporary custody order of the South Carolina court did not confer on it continuing jurisdiction to enter a permanent custody decree. *Id.* at 104–05, 676 A.2d at 948. Further, the best interest test furnished no basis for jurisdiction in South Carolina under the UCCJA, because use of that standard as a basis for jurisdiction in a child custody case had been forbidden by the superseding federal Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A. *Id.* at 107–08, 676 A.2d at 949–50. Consequently, Maryland could exercise custody jurisdiction as Brittany's home state. *Harris* does not stand for the proposition that, in this case, this Court can review the exercise of discretion by the Arizona court when it determined under the UCCJEA inconvenient forum provisions that Maryland was the more appropriate forum.

Here, a Maryland domiciliary, Mr. Krebs, applied to a Maryland court to have it decide the custody of his children, who were present in Maryland. That court acquired jurisdiction under the UCCJEA by the deferral to Maryland by the court in the children's home state, to which Ms. Krebs applied for the custody decision. Were we to undertake a review of the Arizona court's decision to decline jurisdiction and decide that it abused its discretion, resulting in our mandate to the Circuit Court for Worcester County to close its doors to Mr. Krebs's custody petition, we would produce a jurisdictional conflict in this interstate custody dispute that the UCCJEA was intended to eliminate.

### III

 Ms. Krebs's remaining contention is that Maryland can exercise initial custody jurisdiction "only if" the children and Mr. Krebs "have a significant connection" with Maryland and "substantial evidence is available in this State concerning the [children's] care, protection, training and personal relationships[.]" FL § 9.5–201(a)(2)(i) and (ii). She submits that the evidence is insufficient to establish this jurisdictional foundation. We shall assume, *arguendo,* that the UCCJEA splits the decisional functions between the court in the home state and the court in the significant connection state, and that, despite assigning to the former application of the inconvenient forum factors, see Part II, *supra,* the UCCJEA assigns to the latter the decision whether the basic elements described in FL § 9.5–201(a)(2) are present.

FL § 9.5–201 deals only with jurisdiction to make an initial custody determination. The *pendente lite* award of custody was an exercise of temporary emergency jurisdiction. That order remained in effect until the permanent order. *See Harris,* 110 Md.App. 95, 676 A.2d 944; *Nadeau v. Nadeau,* 716 A.2d 717 (R.I.1998), and FL § 9.5–204(a) and (b)(1).[8] Under this sequence of events, the facts relevant to significant connection and substantial evidence may be determined as of the time of the award of permanent custody, following the trial on the merits.

---

8. FL § 9.5–204(a) and (b)(1) provide:

"(a) *Grounds.*—A court of this State has temporary emergency jurisdiction if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

"(b) *Effect of current custody determination if no previous determination has been made.*—(1) If there is no previous child custody determination that is entitled to be enforced under this title and a child custody proceeding has not been commenced in a court of a state having jurisdiction under §§ 9.5–201 through 9.5–203 of this subtitle, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under § § 9.5–201 through 9.5–203 of this subtitle."

This Court, without directly addressing the timing issue, looked to the evidence at the merits hearing for proof of the subject jurisdictional facts in *Etter v. Etter,* 43 Md.App. 395, 405 A.2d 760. In that case the family home was in Delaware. In November 1977, the mother left the family home and took up residence and employment in Maryland. On July 22, 1978, the mother went to Delaware and brought her thirteen year old son to Maryland, at his request. The mother obtained, on August 11, 1978, an *ex parte* order, awarding her custody of her son during the pendency of the proceedings. That same day, the father had sued for custody in Delaware. Subsequently, on August 28, 1978, the Delaware court stayed the proceeding in that state, having learned of the Maryland proceeding. At the merits hearing in Howard County, held on September 20, 1978, both parties and a total of seven other witnesses testified. The Maryland court awarded custody to the mother.

On appeal, the father argued that the Maryland court had no jurisdiction under the UCCJA, and particularly under Maryland Code (1957, 1978 Cum.Supp.), Article 16, § 186(a)(2). That statute conferred jurisdiction if, *inter alia:*

"It is in the best interest of the child that a court of this State assume jurisdiction because (i) ... the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships...."

In holding that the Howard County court had jurisdiction under the above-quoted section of the UCCJA, this Court relied upon the facts reflected in the comprehensive opinion of the trial court, rendered after the merits hearing. *Etter,* 43 Md.App. at 399, 405 A.2d at 763. *See also Carl v. Tirado,* 945 A.2d 1208, 1210 (D.C.App.2008) (Where infant had no home state, and significant connections controlled, court looked to presumed facts at time of dismissal, four months after custody action filed.).

Further, our conclusion is implied by the wording of the statute. FL § 9.5–201, the initial jurisdiction section, specifies the time for determining home state jurisdiction. Maryland must be the home state "on the date of the commencement of the proceeding" or must have been the home state "within 6 months before the commencement of the proceeding." FL § 9.5–201(a)(1). The significant connection and substantial evidence provision, FL § 9.5–201(a)(2), contains no similar directive. Under the introductory language of subsection (a), coupled with sub-subsection (a)(2), a Maryland court "has jurisdiction to make an initial child custody determination only if" there is a significant connection and substantial evidence is available. We discern no basis in the statute for prohibiting consideration of the facts relevant to Maryland jurisdiction as they might evolve after the complaint is filed and prior to the decree. Here, the facts supporting jurisdiction grew stronger during the period of the postponement, requested by Ms. Krebs, of an early merits hearing.

With respect to the sufficiency of the evidence of significant connection and substantial evidence, *Etter* is also instructive. The mother had lived and worked in Maryland for nine and one-half months. 43 Md.App. at 400, 405 A.2d at 763–64. She had acquired a single family dwelling. *Id.*, 405 A.2d at 764. Her son resided here for five weeks and was attending school in Maryland for an even lesser period. The child had formed close family ties with two of his maternal aunts, and he had established close medical connections with a psychologist in Howard County who was treating both the mother and son for the effects of the marital strife. *Id.* These facts satisfied the significant connection element. This Court also found the substantial evidence factor satisfied by the fact that the son's school and medical records were available in Maryland.

When permanent custody was awarded in the instant matter, Mr. Krebs had lived in Maryland for twenty-one months. He had steady, full-time employment. He had established a relationship with a woman in whose single family cottage he and the children resided. The children had lived in Worcester County for ten months. They had been attending school in

Worcester County for over seven months. Their paternal uncle resided in that county. These facts, coupled with the declination by the Arizona court, established custody jurisdiction under FL § 9.5–201(a)(2)

Alternatively, if the sufficiency of the evidence of the significant connection and substantial evidence factors is to be tested as of the time when the Arizona court declined jurisdiction over Ms. Krebs's action, we hold that the result would be the same. Under that time frame, Mr. Krebs had resided in Maryland for fifteen months and the children had lived here for about three and one-half months. They would have been in school in Maryland for about two weeks. The other factors would not change.

Under UCCJEA § 201(a)(2) [FL § 9.5–201(a)(2)], the significant connection and substantial evidence factors also may become bases for jurisdiction if "a court of another state does not have jurisdiction under" the home state provisions set forth in item (1) [FL § 9.5–201(a)(1)]. Thus, cases involving the "no home state" provision are relevant to the issue before us. In *In re Marriage of Hamilton*, 120 Wash.App. 147, 84 P.3d 259 (2004), the mother left her husband in Texas to return, with their seven year old son, to her parents' home in Washington. Five months later, she sued in Washington for dissolution of the marriage and for child custody. The mother had lived in Washington for seven years as a child and had attended one year of college in that state. The son had serious medical problems and had received extensive medical treatment in Washington, where he was covered by Medicaid. These facts furnished a sufficient factual basis for jurisdiction. *Id.* at 120 Wash.App. at 154–56, 84 P.3d at 263.[9]

The "no home state" provisions were applied in *In re S.W.*, 148 Cal.App.4th 1501, 56 Cal.Rptr.3d 665 (2007), in a termination of parental rights case. The appellant mother and her two children had been in California "several months" when the

---

9. Whether strictly relevant or not, the equities favored this result. The child had no health insurance in Texas.

proceedings began. The father's whereabouts were unknown. *Id.* at 667.

*Carl v. Tirado*, 945 A.2d 1208 (D.C.App.), involved an infant boy who was born to unmarried parents in Maryland. When the boy was four days old, he was taken by his mother to Virginia. The father sued for custody in the District of Columbia when the child was nine days old. The infant, therefore, had no home state. The District of Columbia had jurisdiction, however, because the father resided in the District, the infant was baptized there, he had been cared for during the day by his father who returned the child to the mother in the evenings, and there were extended family members in the District of Columbia. In addition, the mother was suing the father for child support in the District.

The facts in the matter before us, viewed as of September 11, 2007, are as strong, if not stronger, in support of the significant connection and substantial evidence factors as are those in the three cases reviewed above.

For the foregoing reasons, we affirm.

**JUDGMENT OF THE CIRCUIT COURT FOR WORCESTER COUNTY AFFIRMED.**

**COSTS TO BE PAID BY THE APPELLANT.**